[No. 1113.]

## R. SADLER, APPELLANT, v. CELSO TATTI & CO., RESPONDENTS.

ATTACHMENT—MUST BE SERVED BY SHERIFF OF COUNTY WHERE PROPERTY IS SITUATED—EXCEPTIONS.—Under the statutes of this state an attachment must be served by the sheriff of the county where the property is situated, except in cases where one county is attached to another for judicial purposes.

IDEM—COUNTIES ATTACHED FOR JUDICIAL PURPOSES.—A county is not "attached" to another county for judicial purposes simply because it and another county, or counties, form one judicial district. To be so "attached" both counties must, under the law, be treated as one county in all matters pertaining to the courts.

APPEAL from the District Court of the Sixth Judicial District, Eureka County.

The facts are stated in the opinion.

*Baker & Wines*, for Appellant.

*R. M. Beatty*, for Respondent.

By the Court, LEONARD, J.:

This case was presented to the court below upon a submission of the facts, as permitted by chapter 3, title X, of the civil practice act, providing for the submission of controversies without actions.

The counties of Eureka, White Pine and Lincoln, in this state, constitute one judicial district. (Stat. 1877, 164.)

On the thirtieth day of April, 1880, plaintiff and defendants severally commenced an action in the district court of the sixth judicial district, in and for Eureka county, against G. Massera & Co., and on the same day each caused a writ of attachment to be issued against the property of the defendants named therein.

Defendants' writ was directed to and placed in the hands of the sheriff of Eureka county for service, commanding him to attach and safely keep the property of G. Massera & Co., or either of them, within the county of Eureka, or the sixth judicial district.

On the same day the sheriff of Eureka county, for the purpose of serving the writ, went into White Pine county, and then and there levied on certain property belonging to the defendants in said action.

Plaintiff's writ was directed to and placed in the hands of the sheriff of White Pine county for service, commanding him to attach and safely keep the property of G. Massera & Co., or either of them, within the county of White Pine.

On the first day of May, 1880, the sheriff of White Pine levied said writ upon the property which had been attached on the previous day by the sheriff of Eureka county in the action commenced by the defendants herein, and which is the subject of this controversy.

Defendants obtained judgment against G. Massera & Co. on the seventeenth of May, 1880.

An execution was regularly issued thereon, and directed to and placed in the hands of the sheriff of White Pine county, who levied on and sold thereunder the property theretofore attached by both parties.

Plaintiff also obtained judgment against G. Massera & Co. on the twenty-second day of May, 1880, upon which an execution was regularly issued and directed to, and placed in the hands of, the sheriff of White Pine county, who levied on and sold thereunder the same property.

When the writs of attachment were issued and the levies made, there was a legally organized district court, and a duly elected and qualified sheriff, in White Pine county.

Upon the facts stated, the question presented for our consideration is, which of the contending parties, plaintiff or defendants, obtained a priority of lien under and by virtue of his writ of attachment issued, directed and served as before stated? The court below held in favor of defendants' attachment and priority of lien, and against plaintiff's.

This appeal is taken from the judgment.

Defendants' levy was first made by the sheriff of Eureka county, and the correctness of the judgment depends, therefore, upon a proper solution of the question whether or not he had authority, under the statute, to attach the property of G. Massera & Co., situate in White Pine county.

If he had such authority, then the writ in defendants' case was properly directed, its commands to him, and his compliance therewith, were legal, and Celso Tatti & Co. secured a priority of lien.

On the contrary, if the sheriff of Eureka county had not power to make the levy in White Pine county, then the writ was not legally directed or served, and the court below erred in its conclusions of law and judgment. (Drake on Attachment, sec. 194.)

In support of the judgment appealed from, respondents rely upon section 16 of "An act relating to sheriffs," approved November 28, 1861 (C. L. 2967), which is as follows: "The sheriff in any county, in any judicial district in this state, to which any other county or counties in such district may be attached for judicial purposes, shall have power and authority to serve all process, writs, orders, or other papers, issued or directed to him by the district court, or the clerk thereof, within any county or counties so attached, the same as if the said county or counties were not separate and distinct counties."

It is plain from the above that the sheriff of Eureka county was not thereby empowered to serve the writ in White Pine county unless the latter county was attached to Eureka county *for judicial purposes.*

Does it follow, because two or more counties compose one judicial district, that therefore they are "attached for judicial purposes."

Did the legislature of 1861 so intend? We think not.

The statute relating to sheriffs, above referred to, must be construed in connection with others passed at the same session, and particularly sections 6 and 13 of "An act defining the judicial districts," etc. (Stats. 1861, 289, and section 123 of the civil practice act, p. 334.) The last-named section (approved November 29, 1861), provided "that the writ of attachment shall be directed to the sheriff of any county in which property of such defendant may be, and require him to attach and safely keep all the property of such defendant within his county, not exempt from execution, or so much thereof as may be sufficient to satisfy the plaintiff's demand. * * * Several writs may be issued at the same time to sheriffs of different counties."

That section was re-enacted in 1869, and is now in force.

It is so plain that it does not admit of construction. The writ must be directed to the sheriff of the county where the defendant's property is situated, and that officer must make the levy. This section and section 2967, Comp. L., are easily reconcilable.

A few days before these two sections became laws (November 25, 1861) nine counties had been created out of the territory of Nevada, and their boundaries established, to wit: Esmeralda, Douglas, Ormsby, Washoe, Lyon, Storey, Lake, Humboldt and Churchill. (Stat. 1861, 50.)

On the twenty-ninth of November, 1861, the territory was divided into three judicial districts, as follows: The first embraced Storey, Washoe and Lake counties; the second, Ormsby, Douglas and Esmeralda; the third, Lyon, Churchill and Humboldt.

There were three supreme court judges, and each was assigned to a district as the presiding judge therein. The terms of court in the respective districts were fixed. (Stat. 1861, 289.)

By the sixth section of the statute it was provided that "the terms of the third judicial district court shall commence annually at the county seats of the several counties of the district as follows: In the county of Lyon on the first Mondays of March, July and October, and in the county of Humboldt on the third Mondays of April and August. The county of Churchill is hereby attached to the county of Lyon for judicial, county and revenue purposes."

Section 13 of the same statute provided that "when one county is joined to another for judicial purposes, the two counties so joined shall be treated as one county so far as all business pertaining to the district and probate courts are affected."

Of the nine counties then established all were fully organized except Churchill. That was attached to Lyon for judicial, county and revenue purposes, and to the extent stated, was practically a part of Lyon county.

Churchill county was the only one that was attached to another for judicial purposes. It was the only county that did not have its own court and court officers. It was the only

one that did not act independently of all other counties in the same judicial district.    Lyon and Churchill were the only counties that, under the law, were " treated as one county " as to all business appertaining to district and probate courts.

Storey, Washoe and Lake made up the first district.    If, in the sense of the statute, they were " attached for judicial purposes," then they must have been treated as one county as to all matters affecting the courts mentioned.    But they were not, nor were they intended to be, so treated.    On the contrary, they were treated as separate, independent counties in all judicial proceedings.

True, one judge at different times, presided in each of three counties, but the jurisdiction of the court in each did not extend beyond its own boundaries.    Suits had to be instituted in their own proper county, and courts had not power to require the attendance of jurors residing out of the county where the court was held, although in the same district.

In a word, the only thing then in common between the three counties at that time composing the first judicial district, was a judge; and he acted independently in each county, and the result was the same as though there had been three presiding judges in those counties.    There were three different independent courts, although they were presided over by one man, and the same is now true as to the sixth judicial district.

But in the case of Lyon and Churchill counties there was but one court; suits instituted from both counties had to be brought therein, and the jurisdiction of that court extended over the persons and property of the two counties, the same as though the boundaries of Lyon had embraced the territory included in Churchill.

In 1864 Churchill county was for the first time organized into a distinct county, " with all the rights, privileges and immunities thereunto belonging."    (Stat. 1864, 86.)

By that statute it was detached from Lyon county for judicial purposes, and given a separate court of its own, although remaining a portion of the third judicial district.    It was then, for the first time, in the same situation, in relation to

the other counties in that district, as Eureka now is as regards White Pine and Lincoln.

We have seen that Lake county, in 1861, formed a part of the first judicial district.

In 1862 its name was changed to Roop. (Stat. 1862, 6.)

In 1864 the county of Roop was attached to Washoe, for judicial, legislative and revenue purposes; and both counties were declared to constitute one district, and be entitled to such representation in the legislature as might be prescribed by law. (Stat. 1864, 159.)

By section 25 of article XVII. of the constitution, it was declared that "the county of Roop shall be attached to the county of Washoe for judicial, legislative, revenue and county purposes, until otherwise provided by law."

Roop county has no court and no judicial or other machinery of its own, nor can it have until the legislature otherwise provides. Practically, it is a part of Washoe county; but for judicial purpose, in the sense of the statute relied on by respondent, its situation with Washoe is precisely the same as was that of Churchill with Lyon in 1861. For these purposes it is, and in 1861 Churchill was, attached to another county.

Its condition satisfies the requirement of the statute that when one county is joined to another for judicial purposes, the two counties, in court matters, shall be treated as one county.

But neither of the counties embraced in the sixth district is in the same predicament. Under the law, neither is, or can be, treated, for judicial purposes, as a part of either of the others, or of both.

We are satisfied the legislature did not intend that a county should be regarded as attached to another county "for judicial purposes," in the sense of those words as used in section 2967, Comp. L., simply because it and another, or others, form one judicial district.

The legislative intent was to empower the sheriff of a county to serve process, issued out of the district court of his county, in another county in the same district, if the last-named county is attached to the former for judicial purposes—that is to say, if both counties, under the law, are treated as one county in all matters appertaining to district and probate courts, and not otherwise.

This view reconciles section 2967, Comp. L., and section 123 of the civil practice act of 1861 and 1869.

Upon the facts stated, we think plaintiff had, and has, a priority of lien on the property in question.

The judgment appealed from is reversed, with instructions to the court below to enter judgment herein for plaintiff.