## MIKE PETERSON, Appellant, v. CHARLES M. WIESNER, Respondent.

No. 3398

March 4, 1944.                    146 P. (2d) 789.

*William S. Boyle,* of Reno, for Appellant.

*John R. Ross,* of Carson City, for Respondent.

## OPINION

By the Court, TABER, J.:

On the 5th day of June 1942 appellant Peterson commenced an action in the justice's court of Hawthorne Township, Mineral County, against respondent's daughter, Mrs. Worthy, and his wife. The complaint alleged that Mrs. Worthy had bought, but failed to pay for, merchandise of the value of $25.59, and that Mrs. Wiesner, prior to the granting of any credit to Mrs. Worthy, guaranteed to Mr. Peterson that she would be personally responsible for said account, but had refused payment after the indebtedness had been incurred.

Neither Mr. Worthy nor Mr. Wiesner was made a party defendant.

Peterson caused a writ of attachment to be issued in said case, and caused the sheriff of Mineral County to attach a certain automobile and trailer. Neither of the

Worthys had any interest in the car or trailer, which were the community property of Mr. and Mrs. Wiesner —the title being in his name. Several hours after the levy, Wiesner drove the property away from the driveway at the rear of the courthouse where Deputy Sheriff Richardson had left it parked after levying the attachment. Shortly afterward Wiesner drove the car and trailer to Tonopah, county seat of Nye County. On June 6 Sheriff Wilson swore to a complaint at Hawthorne charging Wiesner with grand larceny. On that day he followed the latter to Tonopah, and there repossessed the car and trailer. After arresting Wiesner at Tonopah, Sheriff Wilson, on June 7, returned with him to Hawthorne, where bail was furnished.

A few days later Peterson and his attorney, Mr. Evansen, were notified that Wiesner claimed ownership of the car and trailer. Peterson directed Mr. Evansen to look into the title. He did so and learned that the title was in the name of Wiesner. Commencing a short time after the property was taken from Wiesner's possession, demands were made upon Peterson, his attorney, and the sheriff for its release. Peterson and his attorney conferred many times, but took no action looking to the release of the car, and it was not ordered released until the 5th day of December 1942. The justice court action was dismissed as to Mrs. Wiesner on November 28, 1942. Possession of the trailer and its contents was restored to Wiesner July 5, 1942. Possession of the car was not restored to Wiesner until March 29, 1943. After the order for the release of the attachment was made, the sheriff continued in possession of the car, holding it as evidence in the criminal proceedings. On March 25, 1943, Sheriff Wilson swore to another criminal complaint against Wiesner, charging him with having taken from the sheriff's custody personal property which was under process of law.

On the third day of August 1942 Wiesner commenced an action for damages against Peterson in the Fifth

judicial district court, Mineral County. The complaint alleges that Peterson, in procuring the issuance of the attachment and directing the sheriff to levy upon the automobile and trailer, acted maliciously and without probable cause in an attempt to compel Wiesner to pay an indebtedness incurred by a third party. It is further alleged that it was the intention of Peterson, in instituting said attachment proceedings, to injure Wiesner's character, reputation, and standing in Mineral County. Paragraph VI of the complaint reads as follows:

"That by reason of the actions and conduct on the part of the defendant, as herein alleged, and by reason of the said attachment this plaintiff was damaged in the following particulars, to-wit: (1) That plaintiff had departed from the town of Hawthorne, Mineral County, Nevada, and was on his way to the State of Arizona, at which place he was to enter upon certain employment, when the Sheriff of Mineral County, Nevada, attached and took possession of plaintiff's automobile and trailer and contents. (2) That plaintiff was compelled to return to Hawthorne, Mineral County, Nevada, where he now must remain until his automobile is released to him by said sheriff; (3) That plaintiff lost the employment to which he was going in the State of Arizona; (4) That he was unemployed in the town of Hawthorne for a period of approximately thirty days; (5) That he was compelled to rent a house, purchase household equipment and clothes for himself and family in the town of Hawthorne by reason of all of his belongings being loaded on the trailer attached and taken by the sheriff; (6) That he has been compelled to employ counsel to protect his legal rights and to advise him in the premises, and that he has paid counsel one hundred and fifty dollars ($150.00) and has agreed to pay said counsel the additional sum of three hundred fifty ($350.00) dollars; (7) That the sheriff of Mineral County, as a part of and as an incident to said attachment, placed the plaintiff under arrest at Tonopah, Nye

County, Nevada, and that by reason of said arrest which was unlawful and without authority, plaintiff was caused much humiliation and suffering; (8) That plaintiff's reputation was destroyed in the community of Mineral County and elsewhere; (9) That by reason of the acts and conduct of the defendant as herein alleged plaintiff's credit rating has been destroyed."

The prayer of the complaint asks judgment for $12,000 actual damages and $5,000 exemplary damages.

Peterson demurred to Wiesner's complaint upon two grounds, first, "that several causes of action are set forth in the said complaint, but that the said causes of action are not separately stated * * *"; second, "that the facts alleged in said complaint are insufficient to constitute a cause of action against this defendant." The demurrer was overruled and time given to answer.

Peterson filed his answer September 14, 1942. It admits that he caused the writ to issue and caused the sheriff to levy it upon the property in question, but denies that said property was held in Tonopah by virtue of the attachment, and denies further that the sheriff of Mineral County levied said attachment at Tonopah. The answer also denies most of the other material allegations of the complaint.

The case was tried before the court without a jury on March 29, 1943. On August 10th following, judgment was entered "that the plaintiff have and recover from the defendant in this action, the sum of Seven Hundred Fifty Dollars ($750.00) damages and his costs and disbursements in this suit incurred." The present appeal is from that judgment, from an order denying Peterson's motion for a new trial, and from the order overruling his demurrer to the complaint.

■■ We shall consider first whether the lower court erred in overruling the demurrer to the complaint. With reference to the alleged failure to state separately several causes of action, it is sufficient to say that this is not a ground of demurrer; such a fault, where it exists,

should be corrected by motion. Gardner v. Gardner, 23 Nev. 207, 45 P. 139.

■ In support of his contention that the complaint does not state facts sufficient to constitute a cause of action against him, appellant first points out that it fails to allege the demand of a bond from Peterson or the release of the car on a verified claim of Wiesner, as provided in chap. 76, Stats. of Nevada, 1933, pp. 88, 89, N. C. L. Supp. 1931–1941, sec. 8708.01. It is the court's opinion that compliance with this statute was not a condition precedent to the owner's right of action. Montgomery v. Kirksey, 27 Ariz. 356, 233 P. 588; Bradley v. Miller, 100 Iowa 169, 69 N. W. 426; Annotation 85 A. L. R. p. 672 (b).

■ Appellant also contends that there are other reasons why the complaint fails to state facts sufficient to constitute a cause of action. He claims that the alleged items of damages are special, but are not specially pleaded. And he argues further that in alleging damages plaintiff (respondent) pleaded no facts, but only conclusions. A reading of paragraph VI of the complaint discloses that at least some of the alleged items of special damages are specially pleaded, and that in alleging them facts, not mere conclusions, are stated. There is a conflict of authority as to whether the amount claimed for each item of special damages must be specifically averred. 15 Am. Jur. 751, n. 16; 25 C. J. S., Damages, sec. 131, p. 756, note 38. However, item (6) of said paragraph VI does specifically allege the amount claimed for counsel fees. It may also be observed that, besides the items of special damages, there is one averment sufficient to support a claim for general damages, namely, the allegation that the sheriff had held possession of the automobile ever since June 6, 1942. Hale on Damages (2d ed.), p. 336, n. 25. As against the general demurrer, therefore, the court is of the opinion that the complaint is good. Whether its allegations have been sufficiently proved to justify the trial court's decision will be taken up later.

██ Appellant contends not only that the amount of damages awarded by the trial court is not supported by the evidence, but that respondent was not entitled to recover at all. One reason advanced for this position is that the evidence fails to show that Peterson acted maliciously or without probable cause. There is no finding by said court that appellant did so act; in effect this constitutes a finding that appellant did not act maliciously or without probable cause. Burlington T. Co. v. Wilson, 61 Nev. 22, 24, 110 P. 2d 211, 114 P. 2d 1094. If Wiesner's right to recover depended upon his alleging and proving malice and want of probable cause, he would not be entitled to recover. But Wiesner was not a defendant in the justice court action. He was a third party, claiming that he had been deprived of the possession and use of his property. It was not necessary, therefore, to entitle him to recover actual damages, that he plead or prove malice or want of probable cause. 7 C. J. S., Attachment, sec. 402, p. 599, note 57; 6 C. J. 418, n. 35; 4 Cyc. 766, n. 61. If the evidence justified it, he was entitled to recover actual damages for wrongful seizure and dispossession. 7 C. J. S., Attachment, sec. 533, p. 667, note 7; 6 C. J. 502, n. 43.

██ Appellant further contends that he should not have been held liable for any damages to Wiesner because he expressly instructed Mr. Evansen, who was his attorney at the time, not to make Wiesner a party to the justice court action nor cause any of his property to be attached. But appellant himself testified that he authorized Mr. Evansen to instruct the sheriff to attach anything belonging to the Worthys or to Mrs. Wiesner. Appellant thought the car and trailer belonged to the Worthys. His attorney knew nothing about either the Worthys or the Wiesners. He relied upon what appellant told him regarding the ownership of the property. The testimony leaves no doubt that it was appellant who caused the car and trailer to be attached, and his answer, as we have seen, admits that he caused the writ of

attachment to issue and to be levied on said property. If appellant thought the property belonged to the Worthys, that would not relieve him of liability for causing it to be attached. It seems to have been the opinion of appellant's attorney that if the car and trailer belong to the Wiesners, Mrs. Wiesner's interest could be attached, but the law is otherwise. Svetinich v. Sheehan, 124 Cal. 216, 56 P. 1028, 71 Am. St. Rep. 50; 17 R. C. L. 169, n. 5; 31 C. J. 115, nn. 44, 49.

The pleadings and evidence clearly show that appellant was responsible for the issuance of the attachment writ and its levy on the car and trailer; but counsel maintains that he should not be held responsible for the action of Sheriff Wilson in taking the property into his possession at Tonopah. It is pointed out that the sheriff of Mineral County has no authority to levy any attachment at Tonopah, which is in another county; also that the proviso in sec. 9298, N. C. L. 1929, was not complied with. The writ was levied at Hawthorne, in Mineral County, not at Tonopah. Sheriff Wilson testified that his purpose in going to Tonopah and taking the property into his possession was to make good on the attachment after Wiesner had driven the car and trailer away from the courthouse at Hawthorne. While a sheriff of one county cannot ordinarily levy an attachment in another (Sadler v. Tatti, 17 Nev. 429, 30 P. 1082), he may pursue the property when removed from his county without his consent after attachment. 1 Wade on Attachment, sec. 176, p. 321. Appellant knew about the attachment proceedings from the first, and that the sheriff had repossessed the property at Tonopah. Repeated demands were made by Wiesner upon Peterson, his attorney, and the sheriff for the release of the attached property, and Peterson learned through his attorney shortly after the first demand was made that the attached property belonged to the Wiesners, not to the Worthys. But, though the trailer and its contents were released from the attachment July 5, 1942, plaintiff took no action whatever toward releasing the car until

December 5, 1942. The court is satisfied that the repossession of the attached property by the sheriff at Tonopah and his continued keeping of the same in his possession were the natural and probable consequences of appellant's wrongful acts and omissions. 25 C. J. S., Damages, sec. 25, p. 487, notes 64, 65, 66; Id. p. 488, notes 72, 73; 15 Am. Jur. 474, 475, nn. 9, 10; Id., 477, n. 2. In repossessing the attached property at Tonopah, Sheriff Wilson was endeavoring to perform his duty with respect to the attachment which Peterson had wrongfully caused to be issued and levied in the justice court action at Hawthorne.

Appellant insists that the whole attachment proceeding was void, and there is much to be said in support of this contention. In the first place, Wiesner was not made a party defendant in the justice court action, though the statute makes the husband a necessary party in such cases. Sec. 8546 N. C. L. 1929, as amended, Stats. of Nevada, 1937, chap. 15, p. 29; N. C. L. 1931–1941 Supp., sec. 8546, vol. 2, p. 1177. Secondly, even if the guaranty alleged to have been made by Mrs. Wiesner was not within the statute of frauds, her community interest in the car and trailer could not lawfully be attached in said action. Svetinich v. Sheehan, supra. Again, no return on the writ of attachment was ever made. When Deputy Sheriff Richardson levied the attachment at Hawthorne June 5, 1942, he drove the car and trailer to the courthouse, and after entering that building informed Sheriff Wilson that he had just attached said property, at the same time requesting him to "keep an eye on it," as he had some work to attend to over in town. While the sheriff was engaged in the performance of other official duties, the car and trailer were driven away by Wiesner. As the car and trailer were left parked at the courthouse so that anyone could drive them away, appellant maintains that they were not kept in the custody of the attaching officers as required by law. Green v. Hooper, 41 Nev. 12, 167. P. 23. We have already seen that the property

could not lawfully be attached in Nye County by the sheriff of Mineral County, and that the justice court action was dismissed as to Mrs. Wiesner on November 28, 1942.

Granting, however, that the attachment proceedings were void, this does not avail appellant. Though void, they were in fact instituted by appellant who, through them, caused the Wiesners to be dispossessed of their property. Wiesner's right of action is based upon Peterson's unlawful and wrongful conduct in causing the writ of attachment to be levied upon the property of the Wiesners, and thereafter ratifying the sheriff's act in retaining it in his possession. Frick-Reid Supply Co. v. Hunter, 47 Okl. 151, 148 P. 83; Western Bond & Mortgage Co. v. Chester, 145 Wash. 81, 259 P. 13; Annotation, 91 A. L. R. 922–936; 5 Am. Jur. 196, n. 18; 7 C. J. S., Attachment, sec. 393, p. 594, note 96; Id., sec 396, p. 596, note 22; 3 Bancroft's Code Pr. & Rem. p. 3278, n. 12. That the attachment proceedings were void in nowise lessens the responsibility of Peterson for causing the Wiesners to be deprived of the use of their community property. The husband has the entire management and control of such property, sec. 3360 N. C. L. 1929, and also has the right, without joining the wife as a party plaintiff, to prosecute an action for being wrongfully dispossessed of it.

Appellant contends that Wiesner is estopped from claiming that his property was attached, for the reason that he drove it away from the courthouse following the levy. By taking the car, says counsel, Wiesner "admitted there was no attachment and levy and he waived his right to a suit for damages against Peterson." Wiesner testified that when he drove the car and trailer away from the courthouse he did not know they had been attached. Regardless of this, however, appellant maintains that the attachment proceedings were void, and that Wiesner was within his rights in driving the car and trailer away. If this contention is sound, then certainly he did not waive his right of

action for the unlawful and wrongful seizure and dispossession. If the attachment proceedings were void, it is clear that the seizure and dispossession were unlawful and wrongful. Wiesner could not be estopped from asserting his right to hold Peterson responsible simply because the former drove the property away from the courthouse—an act which appellant admits he had the right to do. The injury to Wiesner's rights resulted from the seizure of his property and its retention by the sheriff. If the property had not been driven away by Wiesner, it would have remained in the sheriff's possession at Hawthorne. Whether Wiesner was deprived of the possession and use of the property at Hawthorne or Tonopah, or both, the invasion of his rights and the extent of the damage were the same. The seizure and dispossession were brought about in the first place by appellant. They were the natural and probable consequences of his conduct, and in addition to causing the wrongful seizure and dispossession, appellant also ratified the sheriff's acts by not making known his disapprobation after receiving knowledge that the property belong to the Wiesners. As the attachment proceedings were void, it is clear that the seizure and dispossession were without authority of law. As they were the natural and probable consequences of Peterson's conduct, and in view of the further fact that he ratified the wrongful seizure and dispossession, he must be held responsible.

■■■ After the attachment was ordered released on December 5, 1942, the sheriff continued to hold possession of the car as evidence in the criminal proceeding. Appellant claims that from the time Wiesner was arrested at Tonopah the property was held in the sheriff's possession under the criminal proceeding alone, and not at all by virtue of the attachment. It is perfectly clear, however, not only from the testimony of the sheriff and of Mr. Evansen, but from Peterson's own testimony, that until December 5, 1942, the car was held by virtue of the attachment, regardless of

whether it was also held under the criminal proceeding.

As a further reason why Wiesner should not recover at all in this action, appellant points to the former's failure to comply with the provisions of chap. 76, Stats. of Nevada 1933, pp. 88, 89, N. C. L. Supp. 1931–1941. sec. 8708.01. But as we have already seen, compliance with this statutory provision is not a condition precedent to a third party owner's right of action in a case of this kind.

There remains for consideration the question whether the decision of the trial court awarding Wiesner $750 damages is supported by the evidence. In this connection two observations may be made here. First, we are concerned only with compensatory damages, as the trial court made no findings which would support an allowance of exemplary damages. Second, the trial court held, and we think correctly, that appellant should not be held liable for any damages growing out of criminal proceedings against Wiesner. The latter's arrest was not the natural and probable consequence of Peterson's conduct.

Following is a summary of the testimony relating to the various items of damage listed in paragraph VI of Wiesner's complaint:

Item (1). Wiesner testified that the occasion of his being in Tonopah was that he had quit his job at Hawthorne and was leaving there to go to Arizona; that he had with him in the car and trailer his household belongings, furniture, and equipment; that after returning to Hawthorne he had to drop his plans to go to Arizona because his car was attached and he was held on a criminal charge. Asked whether he had employment in Arizona he replied, "It was equivalent to that."

"Q. You were going to a job? A. Yes."

On cross-examination: "Q. You stated that you had a job in Arizona. What was the nature of the job? A. I said the equivalent."

Wiesner further testified that he was going to Arizona to benefit his health; that he was sick; that he was

detained at Hawthorne because of the warrant of arrest and the attachment; that his illness, which had been going on for some years, had become worse in the last few months; that it was heart trouble; respiratory trouble—dust and alkali. Peterson testified that in conversation with Mrs. Worthy relating to the contemplated trip of her husband, herself, and the Wiesners to Arizona she said, "We don't want to get frozen on the job here in Nevada. We want to go to Arizona to live."

Item (2). Wiesner testified that he had been in Hawthorne continuously since being brought back there from Tonopah; that he thought it was necessary for him to stay there because of the attachment.

"Q.   As a matter of fact you stayed here (at Hawthorne) because the sheriff had arrested you, wasn't that it, and put you under bond?   A.   I don't know."

Wiesner further testified that he thought he was detained at Hawthorne as the result of the warrant of arrest and the attachment, but that he could not differentiate and say which was the more important to him and which detained him—the arrest or the attachment; that he had saved up some money before leaving for Arizona, but after being brought back to Hawthorne felt that he had to stay and see the case through.

Item (3). He testified that because of being returned to Hawthorne he lost the employment to which he was going in Arizona; that he had the equivalent of a job in Arizona.

Item (4). He testified that since returning to Hawthorne he had been reemployed, working at his usual trade of carpentry; that he had been unemployed there approximately two or three weeks; that he could have acquired a job at Hawthorne right away, but had to arrange for counsel and to defend himself; that he made many trips (to Carson City) to see counsel.

"Q. You meant relative to the criminal case?   A. I meant relative to all the cases."

He testified that he had lost much time since going

back to work; that he could not estimate how much time was lost in connection with the criminal case and how much on the attachment; that with respect to the time he lost in employment since he was brought back to Hawthorne, he could not say "how many dollars but I have spent an awful lot of time and an awful lot of money. * * * I guess I have lost twenty-five per cent of the working days. * * *

"Q. Was it through sickness or through this case? A. Mostly running around trying to get straightened out on this matter."

Item (5). He testified that by reason of his household goods being attached it became necessary for him to replace some of them by purchasing others.

Item (6). He testified that by reason of the attachment and his efforts to have the same released it was necessary for him to employ an attorney; that he employed Mr. Ross; that the value of the attorney's services rendered in connection with these matters was $500, of which he had paid $150, leaving him indebted to Mr. Ross in the sum of $350.

"Q. Not in this instant case but for services performed in relation to having these attachments released? A. That's right."

On cross-examination he testified that he made many trips to arrange for counsel and to defend himself.

"Q. You meant relative to the criminal case? A. I meant relative to all the cases. * * *

"Q. You promised to pay Mr. Ross the $500.00, was that it, on the matter of the criminal cases and the attachment? A. I don't know how he enters it.

"Q. He was representing you in all criminal and civil matters? A. I believe so.

"Q. Do you know how many there were? A. I don't know.

Item (7). It is not necessary to summarize the testimony relating to this item, which concerns the criminal proceedings only.

Items (8) and (9). Wiesner testified that his reputation and credit in the community were damaged badly, and that the damage done to them was further enhanced by his repeated arrests on the charges arising out of this case; that he had been married twenty years, had never been convicted of a felony and had never been in any trouble; that he presumed his credit was ruined "in the manner that it is always the case that way. * * * I don't feel like asking for the credit I previously did.

"Q. You don't know. It is just an assumption on your part. Is that not so? A. I am unable to answer that question.

"Q. Then you are likewise unable to compute this damage that you have lost; that you have suffered? A. I don't think damage of that kind can be figured in dollars and cents."

With reference to the value of the car, Wiesner testified that he valued it highly; that he originally bought it at a cost of $35 and spent, he would say, somewhere in the neighborhood of $200 repairing it; that he had acquired another automobile approximately four or five months after the attachment.

As to the amount of actual damages claimed, he testified:

"Q. By reason of your having been arrested and returned to Mineral County, by virtue of your being forced to remain in Mineral County pending all of these matters and these matters now pending, all arising out of the attachment; the employment that you could not take in Arizona; the household equipment that was necessary for you to purchase by reason of your belongings being attached; the money that you have become indebted to myself as your counsel and the embarrassments and humiliation that you have alleged; loss of reputation, you have alleged to be twelve thousand dollars. Is that correct? A. I believe that is right."

Asked to explain how he was damaged in the sum

of $12,000, or any sum at all, he testified that he was a layman in figuring this, and did not know definitely. In this connection he further testified that he felt he had been damaged in the amount of $17,000 (including $5,000 claimed for exemplary damages) ; that his health alone was far in excess of $17,000; that he had been examined by a doctor but did not have the doctor's report.

In fixing the amount of damages, the trial court said:

"The matter of fixing damages in this action is very hard to determine. First: Because it is hard to say just when the liability commenced and ended as to depriving the plaintiff here of the use of his automobile. Second: How much time he actually lost on account of the Justice Court action and the attaching of his automobile in the Justice Court civil action. Third: How much expense he was actually put to by reason of the attachment of his car the holding of the same in the Justice Court civil action or in the criminal action. It is safe to assume that he has been damaged.

"There are many other items that may be taken into consideration as further loss of time, annoyance, the purchase of furniture, the specific amounts or items of cost which are not in the record.

"Taking all of these matters into consideration and analyzing the plaintiff's testimony to the fullest extent with reference to damages, I am thoroughly convinced that a reasonable amount to be awarded to the plaintiff for damages in this action is the sum of Seven Hundred Fifty Dollars ( $750.00)."

Such facts as were found by the trial court, and its conclusions of law, are incorporated in the written decision. No separate formal findings of fact or conclusions of law appear in the record. The damages awarded are in the aggregate, no specific amounts for any of the various items being found by the court. Aside from the amounts claimed in the prayer of the complaint ($12,000 actual and $5,000 exemplary damages), the only specific amounts mentioned in the complaint

or in the transcript of testimony are in connection with attorney's fees, the purchase price of the car and the amount of repairs which had been made on it. All damages alleged in the nine items of paragraph VI of the complaint are special. Deprivation of the use of the car is the only allegation of general damages. The amount of compensatory damages, whether general or special, must be proved. Hale on Damages (2d ed.), pp. 333, 334.

█ Before taking up the nine items of alleged special damages, the court will consider the one item of general damages. It clearly appears that the sheriff kept possession of the car, under the attachment, from June 6 to December 5, 1942; but there are no further facts from which the quantum of damages can be arrived at. We do not say there was no damage; but in the absence of any substantial evidence showing its approximate amount only nominal damages could be allowed.

█ We shall now consider the items of special damages. Item (1). Interference with Wiesner's going to Arizona, for which Peterson was responsible, may well have damaged the former; but here again there is a complete failure of proof as to the amount of the damage. Respondent seems to have expected that the trial court would be able to fix the amount of this and other items of special damage, notwithstanding he neither made an estimate of them himself nor offered facts from which the court could do so.

Wiesner testified that he was going to Arizona on account of his health, but his complaint makes no mention of illness, and no application was made to amend it in this respect. The only mention of his physical condition made in the case in chief was his testimony that when, at Tonopah, Sheriff Wilson asked him to connect the trailer to the car, he declined. "He asked me why, and I told him that I didn't feel well enough. I was physically unable * * *." At no time during the trial did Wiesner's counsel ask him any question

relating to his health, the only questioning on that subject being on cross-examination and one question by the court. Nor does the trial court's decision make any finding regarding illness or injury to health. Peterson claims that the Wiesners and Worthys were going to Arizona because they did not want to be "frozen on the job" at Hawthorne. The record indicates that the illness of Wiesner was brought into the case for the purpose of refuting this contention, not with the idea of basing a claim for damages for injury to health.

With reference to items (2) and (3), we are again confronted with an entire failure of proof regarding the amount of the alleged damage.

█ Item (4). Here Wiesner testified to a number of material facts relating to unemployment and loss of time after returning to Hawthorne, but he gave no estimate of the amount he had been damaged thereby; he did not even tell the court what, or approximately what, wages he would have received had he been employed during the time he lost "mostly running around trying to get straightened out on this matter." His testimony that he had spent "an awful lot of time and an awful lot of money" does not afford a sufficient basis to form any conclusion as to what his lost time was worth. Panhandle & S. F. R. Co. v. Reed, Tex. Civ. App., 273 S. W. 611.

Item (5). Here the failure of proof as to the amount of damages is so clear as not to require any discussion.

█ Item (6). On direct examination Wiesner testified that the $500 was for his attorney's services in having the attachment released. On cross-examination he said he made many trips to arrange for counsel to defend him "relative to all the cases." The trial court made no finding regarding attorney's fees, nor did it mention the subject at all in its decision. Weighing the testimony in the light of the allegations of the complaint relating to this item, we think the statement made by Wiesner on cross-examination should be accepted. The

court is of opinion that in an action of this kind, recovery may be had for expenses incident to the wrongful levy, including attorney's fees, provided of course they were the natural and proximate consequence of the injury complained of, and were incurred necessarily, in good faith, and in reasonable amount. 7 C. J. S., Attachment, sec. 405, p. 604, note 34; 25 C.J.S., Damages, sec. 50, pp. 534–535, nn. 64–67. In the case at bar no recovery could be had for attorney's fees for services performed in the criminal proceedings. The evidence fails to show how much of the $500 was paid or to be paid for services in having the attachment released, and how much for other services, including those in the criminal case. In the absence of such evidence, Wiesner could not recover any damages under this item.

Item (7). No recovery could be had under this item, which concerns the criminal case only.

Item (8). The testimony relates to alleged loss of reputation resulting from the criminal proceedings as well as the attachment. Peterson is not liable for any loss of reputation resulting from the criminal proceedings. Even if the testimony had given any estimate of the amount of damage under this item, which it did not, there would be nothing to show what proportion of the damage resulted from the wrongful seizure and dispossession.

Item (9). Loss of business credit may be a proper element of damage, but not where the action is prosecuted by a third party owner of personal property which has been attached in an action against another. Cunningham v. Sugar, 9 N. M. 105, 9 P. 910; 7 C. J. S., Attachment, sec. 405, p. 604, note 37. Even if the law were otherwise, there is also a failure of proof as to the amount of damage alleged to have resulted because of the loss of credit.

Wiesner testified that he believed his actual damages amounted to $12,000. If he could give such an estimate of his total damage, he should also be able to

estimate the various items of damage alleged in his complaint. When asked to explain how he was damaged in the sum of $12,000 "or any sum at all," he said he didn't know definitely. Later, when asked again to explain how he' had been damaged and give some specific amounts, he mentioned but one item, his health; "my health alone is far in excess of $17,000.00." But, as we have seen, there was no claim for damages based on injury to health, nor did the trial court make any finding or any mention of the subject in its decision. Respondent confessed his inability to break down the $12,000 into items. Aside from his testimony as to the aggregate amount, which was evidently not accepted by the court, there was nothing on which the court could base any findings as to the amount of the damage. See Doman v. Baltimore & O. R. Co., W. Va., 22 S. E. 2d 703.

Respondent seeks a money judgment, to justify which he must prove the amount, as well as the fact, of damage. 1 Sedgwick on Damages, sec. 107a. This must be shown by evidence, not necessarily with absolute or mathematical certainty, but with such reasonable certainty as the available evidence permits. There must be substantial evidence as to the amount of the damage; otherwise it can only be arrived at by conjecture, which the law does not permit. 27 C. J. S., Damages, secs. 26, 28; Hale on Damages (2d ed.), sec. 31. There are many cases of tort in which compensation cannot be awarded by any precise pecuniary standard. Sutherland on Damages (4th ed.), sec. 2, p. 3. But in cases such as the present one compensatory damages are susceptible of proof, though only with approximate accuracy; consequently the evidence must furnish some data from which the extent of the damages may be computed. Wiesner has stated a good cause of action in his complaint, and at the trial he proved that appellant wrongfully seized his personal property and dispossessed him of it. But though he proved his right to damages, he failed to prove their amount. The result

is that without further proof he is entitled to recover only nominal damages for the loss of use of the car, which is general damages, and nothing at all in the way of special damages. Hale on Damages (2d ed.), pp. 333, 334.

In view of the conclusion reached by the court, it is not necessary to discuss the rule of avoidable consequences or the duty to minimize damages.

Appellant's contention that certain remarks made by the court at the conclusion of the trial show that excessive damages were given under the influence of passion or prejudice, is without merit. The remarks were made simply for the purpose of encouraging the parties to settle their involved difficulties out of court, and do not, in the court's opinion, show passion or prejudice.

The order overruling defendant's demurrer to plaintiff's complaint is affirmed; the judgment, and the order denying the motion for a new trial, are reversed, and the cause remanded to the district court for a new trial.