SANDY VALLEY ASSOCIATES, A NEVADA LIMITED PARTNERSHIP, APPELLANT, v. SKY RANCH ESTATES OWNERS ASSOCIATION, A NEVADA NON-PROFIT CORPORATION; RICHARD L. CLARK, WILLIS EICHEL, CARMEN EICHEL, THOMAS ELLIOTT, NORA ELLIOTT, DALE ENGEL, LOUISE ENGEL, EDWARD GRIMM, CHRISTOPHER HUKILL, ELAINE MARTIN, SAMUEL K. McCAULEY, FE NANCY, JORDAN McCAULEY, PAUL MUSKAT, ROBERT NEAD, MARY NEAD, ROBERT SPURLOCK, JAN (WILSON) SPURLOCK, HAROLD THOMPSON, BARBARA THOMPSON, LOYD TOWN, ALVIN GLANTZ, ESTELLE GLANTZ, ELAINE (HARKEY) CLARK, CLARK COUNTY, CLARK COUNTY BOARD OF COUNTY COMMISSIONERS, CLARK COUNTY PLANNING COMMISSION, CLARK COUNTY DEPARTMENT OF COMPREHENSIVE PLANNING, AND CLARK COUNTY DISTRICT ATTORNEY, RESPONDENTS.

No. 33021

December 10, 2001                                35 P.3d 964

---

*Simon & Berman,* Las Vegas, for Appellant.

*Stewart L. Bell,* District Attorney, and *Mark E. Wood,* Deputy District Attorney, Clark County, for Respondents Clark County and all county-affiliated respondents.

*Kummer Kaempfer Bonner & Renshaw* and *John A. Curtas,* Las Vegas; *Deaner, Deaner, Scann, Malan & Larsen,* Las Vegas, for Respondents Sky Ranch Estates Owners Association.

Before MAUPIN, C. J., YOUNG and BECKER, JJ.

## OPINION

*Per Curiam:*

This case involves a dispute between appellant Sandy Valley Associates (SVA), a developer, and respondents Sky Ranch Estates Owners Association, as well as the individually named homeowners, over the ownership of certain parcels of real property within a residential subdivision located outside of Las Vegas. The Association and the homeowners commenced the underlying action in this case to compel SVA to convey certain lots to the Association. Following a bench trial, the district court entered judgment in favor of the Association and the homeowners, finding that the lots at issue were always intended to be a part of the landing strip and common areas owned by the Association. In post-trial proceedings, the district court awarded the Association and the homeowners attorney fees as damages.

On appeal, SVA contends that the district court erred by ordering the conveyance of the lots and landing strip to the Association and by awarding attorney fees as damages. We conclude that substantial evidence supports the district court's decision concerning the ownership of the lots and landing strip. However, we also conclude that the district court erred in awarding attorney fees as damages. We therefore affirm that portion of the district court's judgment that relates to property ownership and reverse that portion of the judgment that pertains to attorney fees.

## FACTS

In the late 1970s, SVA developed Sky Ranch Estates I and Sky Ranch Estates II, a remote, fly-in community located approximately fifty miles outside of Las Vegas in Sandy Valley. Sky Ranch Estates I and Sky Ranch Estates II occupy one-half of a quarter section of land with a single landing strip transecting the development from the northeast corner to the southwest corner. SVA created the Association to administer and maintain the common areas, and recorded a declaration of covenants, conditions and restrictions (CC&Rs) in 1978, which required SVA to convey

all ''common properties'' within Sky Ranch Estates, including the recreational areas, streets, landing strip, and all other areas not a part of the residential lots, to the Association.

SVA conveyed title to a landing strip and lots designated as ''common areas'' on the recorded final plat map within Sky Ranch Estates I to the Association. Later, although a declaration of annexation was executed in 1982 that annexed Sky Ranch Estates II to Sky Ranch Estates I, SVA did not convey title to the common area lots or the landing strip within Sky Ranch Estates II to the Association.

In 1992, the Association and the homeowners filed a complaint for declaratory relief, specific performance, breach of fiduciary duty, and enforcement of land use conditions against SVA, seeking to compel SVA to convey five common area lots within Sky Ranch Estates II, as well as a second landing strip, parallel to the first, on the easterly 150 feet of lot 39, to the Association.[1] In its answer, SVA asserted that the plat maps were approved by the County Commissioners without reflecting changes made to the easterly half of lot 39 and that, instead of re-mapping the parcel, SVA modified the plans for the parcel by expressly reserving the easterly 150 feet of lot 39 in the CC&Rs, thereby preventing its use as a parallel landing strip. SVA also disputed that the five triangular lots designated in the Association's complaint were part of the common areas required to be conveyed to the Association.

At a two-day bench trial, the Association presented evidence that the designation ''common area reserved for landing strip'' on the plat map referred to the entire 300-foot width, including the easterly 150 feet of lot 39. The evidence included SVA's representation to the County Commissioners in its plat map for Sky Ranch Estates II that the easterly 150 feet of lot 39 would be a second, parallel landing strip, and that SVA did not express any intent to reserve the easterly 150 feet of lot 39 during the approval process before the County Commissioners. The Association also introduced evidence that a condition of the County

---

[1] In September 1996, the Association filed (under a separate district court case number) a petition for a writ of mandamus against Clark County seeking to compel Clark County to enforce the conditions imposed upon SVA when the final maps for Sky Ranch Estates I and Sky Ranch Estates II were approved by the Board of County Commissioners in the early 1980s. The two cases were consolidated by the district court in October of 1997, and Clark County filed a cross-claim against SVA for specific performance. SVA responded with a cross-claim against Clark County for specific performance based on a waiver request application SVA filed with Clark County in 1996 while this action was pending in district court. All parties later stipulated that Clark County would remain a named defendant only for purposes of naming all indispensable parties and that Clark County would not actively participate in the trial nor would any adverse judgment be entered against it without its consent.

Commissioners' approval of the final plat map for Sky Ranch Estates II was that the Association own and maintain the runways and taxiways. The homeowners' testimony indicated that SVA represented to them that the easterly 150 feet of lot 39 would be developed as a second landing strip, parallel to the runway occupying the westerly 150 feet of lot 39 and that, if the parallel landing strip was not developed, pilots would be forced to use a nearby unpaved Bureau of Land Management runway which, because of its location, frequently experiences cross winds, making plane operation difficult and dangerous.

The Association also presented evidence that the five triangular lots, initially designated as "rec[reational] areas" on the tentative plat map and as "open areas" on the final plat map, did not conform to applicable county codes for development due to their dimensions or size. Development was not feasible on two of the lots because, in addition to their dimensions, one contained a community well and the other was at the end of a landing strip. Witness testimony indicated that these five undevelopable lots had been reserved for badminton courts, tennis courts, and/or a swimming pool, and that these areas were intended to be part of the common areas to be conveyed to the Association under the CC&Rs.

The district court entered judgment for the Association, finding that the easterly 150 feet of lot 39 as well as the five triangular lots designated as "open areas" on the final plat map of Sky Ranch Estates II were always intended to be a part of the common areas owned by the Association, and ordered that title to the property be conveyed to the Association. In addition, based upon a post-trial motion, the district court concluded that the Association was entitled to attorney fees as damages resulting from its action to determine title to real property. Thereafter, the district court signed written findings of fact and conclusions of law reflecting its decision, and ordering SVA to pay the Association $74,567.00 in attorney fees as damages. SVA timely appealed.

## DISCUSSION

### I. *The easterly 150 feet of lot 39 within Sky Ranch Estates II*

SVA contends that the district court erred by granting the Association title to the easterly 150 feet of lot 39 within Sky Ranch Estates II, arguing that SVA is the legal owner of the property because SVA reserved title to the property in the amended CC&Rs.

When a contract is clear on its face, it will be construed from

the written language and enforced as written.[2] Parol evidence is not admissible to vary or contradict the clear and unambiguous terms of a written agreement. However, parol evidence is admissible to determine the true intent of the parties when a contract is ambiguous.[3] Thus, the circumstances surrounding the execution of a contract and the subsequent acts or declarations of the parties may be considered to interpret unclear contractual provisions.[4]

In this case, the CC&Rs constituted a written contract to convey land, but the covenant "excepting the easterly 150 feet of the designated landing strip" created an ambiguity as to the identity of the designated landing strip in light of the recorded plat maps for the subdivision. These plat maps contained a designated landing strip 300 feet wide and were referenced in the CC&Rs. Thus, the district court properly considered parol evidence to resolve the ambiguity.

Additionally, this court will not set aside a district court's findings of fact unless they are clearly erroneous or not supported by substantial evidence.[5] The record reveals substantial evidence from which the district court could find that SVA intended to convey the easterly 150 feet of lot 39 to the Association. In particular, the Association presented various documents, including recorded tentative and final plat maps for Sky Ranch Estates and promotional materials, all of which depicted the entire width of lot 39 as a landing strip. Testimony from the individuals involved in the process of seeking approval of the subdivision before Clark County, including the engineer and a Clark County official, indicated that the County Commissioners conditioned approval of the final plat map upon the Association's ownership of the "common area reserved for a landing strip," including the easterly 150 feet of lot 39. The purchasers of residential lots also testified that SVA orally represented to them that the easterly 150 feet of lot 39 would be used as a parallel landing strip. Accordingly, we conclude that the district court's decision was supported by substantial evidence and was not clearly erroneous.

---

[2]*See Ellison v. C.S.A.A.,* 106 Nev. 601, 603, 797 P.2d 975, 977 (1990).

[3]*See Trans Western Leasing v. Corrao Constr. Co.,* 98 Nev. 445, 447, 652 P.2d 1181, 1183 (1982).

[4]*See Glenbrook Homeowners v. Glenbrook Co.,* 111 Nev. 909, 916, 901 P.2d 132, 137 (1995).

[5]*See Young v. Nevada Title Co.,* 103 Nev. 436, 438, 744 P.2d 902, 903 (1987).

## II.  *The five triangular "open area" lots within Sky Ranch II*

SVA contends that the district court improperly relied upon the tentative plat map for Sky Ranch Estates II, which designated some of the five lots as "rec[reational] areas," in granting the Association title to the property. We disagree and conclude that the district court's decision was supported by substantial evidence.

In particular, the record reveals that the definition of common properties within Article II of the CC&Rs includes recreational areas and that the five lots were designated as "rec[reational] areas" on the recorded tentative plat map for Sky Ranch Estates II, which the County Commissioners used in approving the final plat map and which the district court properly considered in determining the intent of the parties in this case. Although the lots were designated as "open areas" on the recorded final plat map for Sky Ranch Estates II, the evidence presented at trial indicates that the five lots were not developable and that the County Commissioners approved the final plat map for the subdivision with the five lots designated as "open areas" for that reason. Additionally, the evidence indicated that the five lots were always intended to be used for swimming pools and tennis courts. Accordingly, we conclude that the district court's decision was supported by substantial evidence and was not clearly erroneous.

## III.  *Attorney fees*

SVA contends that the district court erred in its award of attorney fees because attorney fees cannot be recovered unless authorized by agreement, statute or rule, none of which exists or applies in this case. The Association and the homeowners assert that the attorney fees were not awarded as costs, but rather as recoverable damages in the underlying action. They contend that the prohibition against fees absent an agreement, statute or rule does not apply to attorney fee awards as damages. This case presents an opportunity for this court to clarify its jurisprudence regarding the difference between attorney fees as a cost of litigation[6] and attorney fees as an element of damage.[7]

---

[6]The following cases involved the award of attorney fees as a cost of litigation pursuant to a rule, statute or agreement. Any language suggesting the fees were awarded as damages is hereby disapproved. *James Hardie Gypsum, Inc. v. Inquipco,* 112 Nev. 1397, 929 P.2d 903 (1996); *Artistic Hairdressers, Inc. v. Levy,* 87 Nev. 313, 486 P.2d 482 (1971); *Glen Falls Ins. v. First Nat'l Bank,* 83 Nev. 196, 427 P.2d 1 (1967).

[7]The following cases involved issues relating to attorney fees as an element of damage. Any language in these cases that suggests attorney fees were considered pursuant to a rule, statute or agreement is disapproved. *Clark County Sch. Dist. v. Rolling Plains,* 117 Nev. 101, 16 P.3d 1079 (2001); *Southern*

In *Young,*[8] we held that attorney fees cannot be recovered as a cost of litigation unless authorized by agreement, statute or rule. When authorized, a district court's award of attorney fees as costs will not be overturned on appeal absent a manifest abuse of discretion.[9]

Procedurally, when parties seek attorney fees as a cost of litigation, documentary evidence of the fees is presented to the trial court, generally in a post-trial motion. Opposing parties have an opportunity to contest the request for attorney fees, and the trial court must determine if any agreement, statute or rule authorizes fees. If the fees are authorized, the trial court examines the reasonableness of the fees requested and the amount of any award. Thus, when a court is requested to award attorney fees as a cost of litigation, the matter is decided based upon pleadings, affidavits and exhibits.[10] On rare occasions, a court may even determine the amount of the attorney fees based upon the court's personal observation of the time the attorney spent in hearings and the quantity and quality of pleadings filed by the attorney.[11]

In contrast, when a party claims it has incurred attorney fees as foreseeable damages arising from tortious conduct or a breach of contract, such fees are considered special damages. They must be pleaded as special damages in the complaint pursuant to NRCP 9(g) and proved by competent evidence just as any other element of damages.[12] The mention of attorney fees in a complaint's gen-

*Nev. Homebuilders v. N. Las Vegas,* 112 Nev. 297, 913 P.2d 1276 (1996); *Michelson v. Harvey,* 110 Nev. 27, 866 P.2d 1141 (1994); *Works v. Kuhn,* 103 Nev. 65, 732 P.2d 1373 (1987); *Summa Corp. v. Greenspun,* 96 Nev. 247, 607 P.2d 569 (1980), *opinion on reh'g,* 98 Nev. 528, 655 P.2d 513 (1982); *International Indus. v. United Mtg. Co.,* 96 Nev. 150, 606 P.2d 163 (1980); *City of Las Vegas v. Cragin Industries,* 86 Nev. 933, 478 P.2d 585 (1970); *American Fed. Musicians v. Reno's Riverside,* 86 Nev. 695, 475 P.2d 221 (1970); *Peterson v. Wiesner,* 62 Nev. 184, 146 P.2d 789 (1944); *McIntosh v. Knox,* 40 Nev. 403, 165 P. 337 (1917); *Brown v. Jones,* 5 Nev. 374 (1870).

[8]103 Nev. at 442, 744 P.2d at 905.

[9]*Nelson v. Peckham Plaza Partnerships,* 110 Nev. 23, 26, 866 P.2d 1138, 1139-40 (1994).

[10]*James Hardie Gypsum, Inc. v. Inquipco,* 112 Nev. 1397, 929 P.2d 903 (1996) (attorney fees were awarded pursuant to agreement and properly proven by affidavit pursuant to NRCP 43(c)).

[11]*Artistic Hairdressers, Inc. v. Levy,* 87 Nev. 313, 316, 486 P.2d 482, 484 (1971).

[12]*International Indus. v. United Mtg. Co.,* 96 Nev. 150, 606 P.2d 163 (1980) (failure to plead damages precluded recovery); *City of Las Vegas v. Cragin Industries,* 86 Nev. 933, 478 P.2d 585 (1970) (fees not properly

eral prayer for relief is insufficient to meet this requirement.[13] Finally, when attorney fees are considered as an element of damages, they must be the natural and proximate consequence of the injurious conduct. If more than one claim is presented in a complaint, the party claiming fees as damages must prove the fees as to each claim.[14]

As a practical matter, attorney fees are rarely awarded as damages simply because parties have a difficult time demonstrating that the fees were proximately and necessarily caused by the actions of the opposing party and that the fees were a reasonably foreseeable consequence of the breach or conduct. Because parties always know lawsuits are possible when disputes arise, the mere fact that a party was forced to file or defend a lawsuit is insufficient to support an award of attorney fees as damages.[15]

Attorney fees may be an element of damage in cases when a plaintiff becomes involved in a third-party legal dispute as a result of a breach of contract or tortious conduct by the defendant.[16] The fees incurred in defending or prosecuting the third-party action could be damages in the proceeding between the plaintiff and the defendant. This type of action could arise from claims against title insurance or bonds and breaches of duty to defend clauses in insurance or indemnity actions.[17]

Attorney fees may also be awarded as damages in those cases in which a party incurred the fees in recovering real or personal property acquired through the wrongful conduct of the defendant or in clarifying or removing a cloud upon the title to property.[18]

---

pleaded in the complaint); *Brown v. Jones,* 5 Nev. 374 (1870) (complaint must allege with distinctness fees resulting only from dissolution of injunction).

[13]*Young,* 103 Nev. 436, 744 P.2d 902.

[14]*Peterson v. Wiesner,* 62 Nev. 184, 146 P.2d 789 (1944) (failure to distinguish fees incurred in wrongful attachment action from fees incurred in collateral criminal case resulted in denial of fees as damages).

[15]*Flamingo Realty v. Midwest Development,* 110 Nev. 984, 991-92, 879 P.2d 69, 73-74 (1994) (fees awarded as damages for filing a frivolous lawsuit vacated as fees were not damages tied to any cause of action and the action was not frivolous pursuant to NRS 18.010(2)(b)).

[16]*Clark County Sch. Dist. v. Rolling Plains,* 117 Nev. 101, 16 P.3d 1079 (2001); *see Restatement (Second) of Torts* § 914(2) (1979); Robert L. Rossi, *Attorneys' Fees* § 8:3 (2d ed. 1995).

[17]Rossi, *supra* note 16, § 8:4-8:11.

[18]*Michelsen v. Harvey,* 110 Nev. 27, 29-30, 866 P.2d 1141, 1142 (1994) (attorney fees permissible as an element of damages in slander of title action);

Finally, actions for declaratory or injunctive relief may involve claims for attorney fees as damages when the actions were necessitated by the opposing party's bad faith conduct.[19]

Although this action involved the clarification of title to real property, the Association and homeowners did not allege attorney fees as special damages caused by SVA's conduct. The complaint merely mentions attorney fees as a part of the general prayer for relief. Nor was evidence of attorney fees presented and litigated at trial. Instead, after receiving affidavits from counsel for the Association and homeowners, the district court, in its findings of fact and conclusions of law, simply stated that attorney fees were awarded as damages. SVA then moved to amend the findings of fact and conclusions of law and opposed the attorney fee award. The Association and homeowners asserted that they were entitled to attorney fees as damages pursuant to a statute, NRS 116.4117. In supplemental points and authorities, the Association and homeowners argued alternatively that they were entitled to attorney fees as damages pursuant to *Summa Corp. v. Greenspun*.[20] Because the district court denied SVA's motion to amend the findings of fact and conclusions of law as to the attorney fee award without explanation, it is unclear whether the district court awarded the attorney fees under NRS 116.4117 or as damages under *Summa Corp.*

On appeal, the Association and homeowners have abandoned their argument that NRS 116.4117 supports the award of attorney fees. The Association and homeowners only assert that the district court properly awarded attorney fees as damages pursuant to our holding in *Summa Corp.*

In *Summa Corp.*, Summa was sued for slander of title and breach of contract. A judgment was entered against Summa that included an award of attorney fees as damages even though no claim for damages was contained in the complaint. This court affirmed the award of attorney fees as damages based upon NRCP 54(c), which commands the district court to "grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

Although attorney fees as damages were not pleaded in the complaint, evidence regarding attorney fees as damages was

---

*Peterson v. Wiesner,* 62 Nev. 184, 146 P.2d 789 (1944); *McIntosh v. Knox,* 40 Nev. 403, 165 P. 337 (1917) (award of attorney fees allowed as damages in wrongful attachment actions); Rossi, § 8:12.

[19]*City of Las Vegas v. Cragin Industries,* 86 Nev. 933, 478 P.2d 585 (1970); *American Fed. Musicians v. Reno's Riverside,* 86 Nev. 695, 475 P.2d 221 (1970).

[20]96 Nev. 247, 607 P.2d 569 (1980), *opinion on reh'g,* 98 Nev. 528, 655 P.2d 513 (1982).

introduced and litigated at trial. We reasoned that the failure to plead special damages under NRCP 9(g) did not deprive the district court of its power to award attorney fees as damages because the matter had been tried, without objection, and NRCP 54(c) was an appropriate vehicle for conforming the judgment to the proof.[21] We then concluded that there was sufficient evidence to support the award and the reasonableness of the fee.

*Summa Corp.* merely stands for the proposition that failure to properly plead special damages pursuant to NRCP 9(g) does not necessarily bar an award of attorney fees when evidence of attorney fees as damages has been litigated at trial. In such a case, motions under NRCP 54(c) or NRCP 15(b) may be appropriate mechanisms for resolving a conflict between the pleadings and the trial evidence. *Summa Corp.* does not, however, permit the award of post-trial attorney fees in contravention of *Young*.

This case is distinguishable from *Summa Corp.* Here, the Association did not introduce or proffer any evidence supporting a claim for attorney fees as damages during trial. Instead, the Association originally asserted that it was entitled to attorney fees, not as an element of damages, but pursuant to statute. Thus, unlike *Summa Corp.*, there is no basis for the post-trial award of fees to conform to the evidence.

In addition to *Summa Corp.*, the Association and the homeowners contend that the district court may have based its decision to award attorney fee damages on *Artistic Hairdressers, Inc. v. Levy.*[22] *Artistic* involved an award of attorney fees for the issuance of a wrongful injunction. Although the language of the case speaks of attorney fees as damages, the actual basis for the award of fees was a rule, NRCP 65. We held that an evidentiary hearing regarding the amount of attorney fees was not required under the rule, because the amount of the fees was small and the district court's observations of the length of the hearings and pleadings was enough to support the fee award under the facts and circumstances of that case. *Artistic* does not authorize a court to award attorney fees as damages when damages have not been pleaded or proven at trial.

We recognize, however, that the language in *Summa Corp.* and *Artistic* may have misled the Association and the district court into believing that the issue of attorney fees as special damages could be raised in a post-trial proceeding. Thus, although the district court erred in this case by considering the issue of attorney fees as damages after trial, the error is understandable. In light of the confusion in our case law, a post-trial evidentiary hearing on the

---

[21]*Id.* at 250-55, 607 P.2d at 571-74.

[22]87 Nev. 313, 316, 486 P.2d 482, 484 (1971).

attorney-fees-as-damages issue is appropriate in this case. Accordingly, we reverse that portion of the district court's judgment awarding attorney fees and remand this case to the district court to conduct an evidentiary hearing. Nonetheless, we reiterate that in future cases, this method is not appropriate for litigating attorney fees as damages. When attorney fees are alleged as damages, they must be specifically pleaded and proven by competent evidence at trial, just as any other element of damages.

## CONCLUSION

The record contains substantial evidence supporting the district court's decision concerning title to the easterly 150 feet of lot 39 and the five "open area" lots within Sky Ranch Estates II. However, the district court erred in awarding attorney fees as damages without an evidentiary hearing. Accordingly, we affirm that portion of the district court's judgment concerning title to the real property, we reverse that portion of the judgment awarding $74,567.00 in attorney fees, and we remand this case to the district court to conduct a hearing to determine whether attorney fees were proximately caused by the conduct of SVA, and if so, the amount of attorney fees incurred incident to obtaining title to the real property in this case.