[No. 2226]

C. H. McINTOSH and H. R. COOKE, and C. H. McIN-
TOSH and H. R. COOKE, Doing Business Under
the Name and Style of McIntosh & Cooke,
Trustee, Respondents, v. CHARLES E. KNOX,
Appellant.

[165 Pac. 337]

1. Garnishment—Wrongful Garnishment—Liability.
    The assignee of a judgment may recover damages for its
    wrongful garnishment in an action to which he is not a party
    without showing malice or suing on the attachment bond or
    under specific statutory authority.

2. Garnishment—Wrongful Garnishment—Damages.
    The assignee of a judgment may recover damages for the
    period a wrongful garnishment of it remained in force, although
    the judgment debtor on the day following such garnishment
    instituted interpleader proceedings and paid the money into
    court.

3. Garnishment—Wrongful Garnishment—Damages.
    The assignee of a judgment wrongfully garnished may recover
    attorney's fees paid in interpleader proceedings instituted by
    the garnished judgment debtor.

4. Judgment—Conclusiveness.
    Where a judgment debtor instituted interpleader proceedings
    upon being garnished, but the right of a claimant to recover
    attorney's fees was not made an issue nor decided in such suit,
    the question is not rendered *res judicata* so as to prevent recov-
    ery of such fees in an action by the claimant for the wrongful
    garnishment of such judgment.

APPEAL from Fifth Judicial District Court, Nye County;
*Mark R. Averill,* Judge.

Action by C. H. McIntosh and H. R. Cooke, doing
business as McIntosh & Cooke, against Charles E. Knox.
Judgment for plaintiffs, and defendant appeals. **Affirmed.**

*Hugh H. Brown* and *J. H. Evans,* for Appellant:

The appellant and respondents joined issue in a trial of
title on the equity side of the federal court. The sole
issue in the case was title. In that character of suit
there can be no other issue. The respondents paid an
attorney fee of $600 in the prosecution of that case.
The expenditure was a necessary, customary and inevi-
table incident of the case. The successful litigants were

deprived of the use of the litigated fund for a period of months while the suit was pending trial and determination. The delay was a necessary and inevitable incident of the litigation. In .actions of this character, it is not the policy of the law to hold unsuccessful litigants liable for incidental and consequential damages.

Under the great weight of authority, an action for damages for wrongful attachment must be grounded upon one of the following grounds: (1) There must be malice or want of probable cause; (2) the action must be on the attachment bond; (3) there must be some specific statutory authorization for the action. In the case at bar the respondents did not sue on an attachment bond; they did not rely upon any statute as a basis for the action; malice and want of probable cause are out of the case. No action arises from the prosecution of an unsuccessful or groundless action unless there be malice and want of probable cause, or bad faith. (*Henderson* v. *Iron Ore*, 38 Fed. 36; *Kemp* v. *Brown*, 43 Fed. 391; *Burton* v. *St. Paul Ry. Co.*, 22 N. W. 300; *Stewart* v. *Sonneborn*, 98 U. S.; *Smith* v. *Story*, 4 Humph. 169; *Stone* v. *Swift*, 16 Am. Dec. 349; *Wilcox* v. *McKenzie*, 75 Ga. 73.) The only remedy is on the attachment bond, in the absence of malice. (*Frantz* v. *Hanford*, 54 N. W. 474.) Malice and want of probable cause must be shown. (*Collins* v. *Shannon*, 30 N. W. 731.) "In this state, the defendant in an attachment suit, where the attachment has been wrongfully issued, has an action on the attachment. * * * If the attachment has been procured maliciously and without probable cause, he may proceed under the common law in an action for malicious prosecution." (*Jaksich* v. *Guisti*, 36 Nev. 110.)

"Without a bond for the payment of damages, or other obligation of like effect, a party against whom an injunction wrongfully issues can recover nothing but costs, unless he can make out a case of malicious prosecution. It is only by reason of the bond, and upon the bond, that he can recover anything." (*In Re Williams*, 120 Fed. 37;

*Tullock* v. *Mulvane,* 184 U. S. 487; *Scheck* v. *Kelley,* 95 Fed. 941.)

The attorney's fees should not have been allowed. (*Oelrichs* v. *Williams,* 15 Wall. 211; *Lindeberg* v. *Howard,* 146 Fed. 467.) "Such fees not being recoverable on bonds given in federal courts, no recovery can be had in an action in a state court on a bond given in a federal court." (33 L. R. A. n.s. 845.) "In most state jurisdictions, recovery may be had on a bond for services in dissolving injunction, but not for trial of main case." (Id., par. 1–4.) "Where the main case results merely incidentally in the dissolution of the injunction, and there were no services by reason of the injunction separate and distinct from other issues in the case, no attorney's fee can be recovered." (*Collins* v. *Huffman,* 93 Pac. 220.) When an action is brought independent of the bond, no attorney's fee can be recovered. (4 Cyc. 887; *Bonds* v. *Garvey,* 39 South. 492; *McGill* v. *Fuller & Co.,* 88 Pac. 1038; *Bogard* v. *Tyler's Administrator,* 78 S. W. 138.)

A third party whose property is attached as that of another, cannot recover attorney's fees paid to obtain release of the attachment unless there be a bond or statutory authorization to support the case. (*First National Bank* v. *McSawin,* 75 S. E. 1106; *Hopkins* v. *Pratt,* 7 La. Ann. 335; *Joslin* v. *McGee,* 39 Pac. 349; *Eickhoff* v. *Tidbalt,* 61 Tex. 421; *Farmers Co.* v. *Gibbons,* 55 S. W. 2; *Corner* v. *McIntosh,* 48 Md. 374; *Bonds* v. *Garvey,* 39 South. 492.)

A judgment on the merits rendered in a former suit between the same parties, or their privies, on the same cause of action, by a court of competent jurisdiction, is conclusive, not only as to every matter which was offered and received to sustain or defeat the claim, but also as to every other matter which with propriety might have been litigated and determined in the action. (23 Cyc. 1170.) The plea of *res judicata* applies not only to points upon which the court was actually required to form an opinion and pronounce judgment, but to every point which properly belonged to the subject of the litigation and which

the parties, exercising reasonable diligence, might have brought forward at the time. (*McLeod* v. *Lee*, 17 Nev. 117; *Sherman* v. *Dilley*, 3 Nev. 17.) A valid judgment is conclusive between the parties, not only as to such matters as were in fact determined in the proceeding, but as to every other matter which the parties might have litigated as incident to, or essentially connected with, the subject-matter of the litigation, whether the same as a matter of fact were considered or not. (Freeman on Judgments, sec. 249; *Denver I. Co.* v. *Meddaugh*, 21 Pac. 565; *Bingham* v. *Kearney*, 68 Pac. 597.)

*H. R. Cooke*, for Respondents:

"Where property has been attached, which does not belong to the attachment defendant, the claimant * * * has a right of action at once * * * to recover damages. Attachment plaintiff is liable to the claimant, not only when he directed the wrongful levy, but also when he subsequently ratifies the officer's acts, independently of any bond. * * * It is sufficient to aver that the attachment and levy thereof was wrongful, it not being necessary to allege that the attachment was malicious and without probable cause. All actual damages resulting from the wrongful seizure are recoverable from plaintiff in attachment, and in such damages may be included necessary expenses incurred in a suit to recover the property." (4 Cyc. 762–769.)

Attorney's fees should be included in the damages recovered. "Attorney's fees for defending an injunction suit at the trial on the merits may be recovered in an action on the bond, although the injunction was not the sole object of the action." (*Hyatt* v. *Washington*, 67 Am. St. Rep. 248; *Neilson* v. *Albert Lea*, 91 N. W. 1113; *Littleton* v. *Burgess*, 16 L. R. A. n. s. 69; *Trapnall* v. *McAfee*, 77 Am. Dec. 159; *Tisdale* v. *Mayor*, 68 Am. St. Rep. 273.) "The right to recover for reasonable attorney's fees paid or incurred in obtaining the discharge of the attachment rests upon the same principle as other costs and expenses

incurred for the same purpose." (2 Sutherland, Damages, 62; *Ah Thair* v. *Quan Wan Co.*, 3 Cal. 261; *Behrens* v. *McKenzie*, 92 Am. Dec. 428; *Reece* v. *Northway*, 12 N.W. 258; *Gonzales* v. *Tobacco Co.*, 26 South. 1012; *Bolling* v. *State*, 39 Am. Rep. 5; *Prader* v. *Grim*, 13 Cal. 585; *Brown* v. *Jones*, 5 Nev. 374.)

The fact that the attachment plaintiff brings in the third party, owner of the attached property, as a party, in no manner affects the right of such third party to sue in independent action and recover damages. (6 C. J. 416; *Dimsdale* v. *Tollerton Co.*, 131 N. W. 689.)

Appellant claims there can be no recovery because of the interpleader suit. Any claim for interest, attorney's fees, etc., would have been premature until the primary question of ownership of the fund was settled. No assertion of items in the present controversy could have been made in the equity suit, because it could not be known until the equity case was finally decided whether respondents would have any standing to claim such items. "The true test is identity of issues. If a particular point or question is in issue in the second action, and the judgment will depend upon its determination, a former judgment between the same parties will be final and conclusive in the second if that same point or question was in issue and adjudicated in the first suit, otherwise not." (23 Cyc. 1300.) Estoppel applies only to questions actually litigated and determined. (Id., 1302–1304, 1311, 1314.)

Where, in an attachment action, an excessive levy was made, causing defendant damage, he could not counterclaim thereon, because the damage claim did not exist at the commencement of the action. (*Esbensen* v. *Hover*, 33 Pac. 1008; *Union Bank* v. *Cross*, 75 N. W. 992; *Jeffreys* v. *Hancock*, 57 Cal. 646; *Jones* v. *Swank*, 55 N. W. 1126; *Tessier* v. *Lockwood*, 24 N. W. 734; *Tecoma Co.* v. *Perry*, 73 Pac. 801; *Gunnis* v. *Cluff*, 4 Atl. 920; *Youngerman* v. *Long*, 63 N. W. 674.)

The right to recover damages is not affected by the fact that the owner intervened as a claimant in the

attachment suit and recovered judgment therein, or that there was a rendition of judgment in that suit adverse to plaintiff.    (6 C. J. 416.)

In an interpleader suit, the question of value or damages for detention cannot as a general thing be considered; this for the reason that the issue is usually, if not invariably, restricted to establishment of claimants' rights. (4 Cyc. 742; *Swift & Co.* v. *Russell,* 97 Fed. 443.)  In such a suit the only issue to be tried is whether or not the property claimed is that of the defendant in the writ and liable to its satisfaction.  (*Schloss* v. *Inman,* 30 South. 667; *Graham Paper Co.* v. *Crowther,* 92 Mo. App. 73.)

By the Court, COLEMAN, J.:

Respondents brought suit in the district court of Nye County to recover damages for the wrongful attachment of a judgment which had been assigned to them, and for attorney's fees expended in procuring the release of the funds thus attached.  Judgment was rendered in the lower court in favor of respondents as prayed, and from such judgment and an order denying a new trial this appeal is taken.

We will not undertake to state all of the details of the case, but such facts only as will be necessary to a full understanding of the questions involved.  R. P. Dunlap brought suit in the District Court of the United States for the District of Nevada to recover judgment against the Montana-Tonopah Mining Company, of which Knox was president, for quite a large sum, and in due time recovered judgment.  Thereafter the judgment was assigned by Dunlap to McIntosh & Cooke, who gave notice thereof to the judgment debtor, after which an appeal was taken by the company to the United States Circuit Court of Appeals, which later affirmed the judgment of the lower court.  McIntosh & Cooke again gave notice to the company of the assignment, which was brought to the attention of Knox, after which, and before the judgment was paid, Knox brought suit in the

United States District Court to recover judgment against Dunlap, who left the state before personal service was made upon him, and attached the judgment theretofore assigned by Dunlap to McIntosh & Cooke by causing garnishment papers to be served upon the Montana-Tonopah Mining Company, of which Knox was still the president. The Montana-Tonopah Mining Company filed in the United States District Court its bill of interpleader, alleging the matters hereinbefore stated, and prayed for an order allowing it to pay the money over to the clerk of the court, to be awarded to the person or persons finally found by the court to be entitled to it. Such an order was made, and the money was paid accordingly. McIntosh & Cooke and Knox appeared in the interpleader proceedings and filed their answers to the bill. On the final hearing the court awarded the money to McIntosh & Cooke.

1. The first contention made by counsel for appellant is that the court erred in rendering judgment in favor of the respondents for damages alleged to have been sustained by them by the wrongful garnishment of the judgment which had been assigned to them by Dunlap. On this point counsel clearly state their theory in their brief, as follows:

"Under the great weight of authority, an action for damages, for wrongful attachment, must be grounded upon one of the three following premises: (1) There must be malice or want of probable cause; or (2) the action must be on the attachment bond; or (3) there must be some specific statutory authorization for the action."

We think the point would be well taken in a suit for damages by a defendant in an action wherein the property attached belonged to the party sued, but such is not the case here. McIntosh & Cooke were not the parties to the attachment suit, but were strangers to it. The rule of law applicable to the situation here is laid down as follows:

"Where an officer levies a writ of attachment on the property of a stranger, attachment plaintiff is liable to the claimant of the ownership and right of possession thereof not only when he directed the wrongful levy, but also when he subsequently adopts or ratifies the officer's acts, independently of any bond, and jointly with the attaching officer." (4 Cyc. 764.)

See, also, *Peterson* v. *Foli*, 67 Iowa, 402, 25 N. W. 677; *Moores* v. *Winter*, 67 Ark. 189, 53 S. W. 1057; *Lee Merc. Co.* v. *Chapman*, 9 Kan. App. 374, 58 Pac. 125; *Blakeley* v. *Smith*, 16 Ky. Law Rep. 109, 26 S. W. 584; *Knight* v. *Nelson*, 117 Mass. 458; *Perrin* v. *Claflin*, 11 Mo. 13; *Vaughn* v. *Fisher*, 32 Mo. App. 29; *Cole* v. *Edwards*, 52 Neb. 711, 72 N. W. 1045; *Dyett* v. *Hyman*, 129 N. Y. 351, 29 N. E. 261; *Adams* v. *Savery House*, 107 Wis. 109, 82 N. W. 703; *Riethmann* v. *Godsman*, 23 Colo. 202; *Frick-Ried* v. *Hunter*, 148 Pac. 83; *Taylor* v. *Hines*, 31 Mo. App. 622; *Comly* v. *Fisher*, Taney's Dec. (U. S.) 121; 6 C. J., p. 416, sec. 966.

May, 1917, issue of Case and Comment, on p. 1023, calls attention to the note to the case of *Davies* v. *Thompson* (L. R. A. 1917B, 395); but as that volume is not yet in our library, we have not been able to avail ourselves of the note in question.

2. But it is insisted that in view of the interpleader proceedings, which were instituted the day after the attachment suit was commenced, pursuant to which the money due under the judgment obtained by Dunlap was paid into court, the attachment proceedings were automatically terminated and that they lost their force and effect, and consequently· practically no damage was caused respondents by the conduct of appellant in instituting the attachment suit and in causing the levy thereunder. We cannot look at the matter in this light. In view of the departure of Dunlap from the state, no personal service of process was had upon him, and the jurisdiction of the court to inquire into the controversy depended upon the contention that property belonging to him was seized and held by attachment proceedings.

If it had been conceded by Knox in the main suit that the attachment had lost its efficacy, that case would have fallen, and the subsequent proceedings along with it; hence it was of vital importance to Knox that the force and effect of the attachment proceedings be maintained which he seems to have realized by his conduct in the interpleader suit. Consequently we cannot escape the conclusion that in legal effect the attachment still held good.

There is one peculiar circumstance in this case. As we have said the writ of attachment in *Knox* v. *Dunlap* was served December 30, 1912, and the bill of interpleader was filed in the federal court at Carson City the following day. Carson City is about nine hours' travel from Tonopah, where the office of the Montana-Tonopah Mining Co. is situated, and where its attorney and secretary resided. Mail leaving Tonopah on the morning of December 31, 1912, would not have reached Carson City on that day until about 6 o'clock in the evening, after the office of the clerk of the United States District Court was closed. Hence the inference is that the bill of interpleader was mailed in Tonopah on or before the morning of December 30, the very day the attachment was served in the suit of *Knox* v. *Dunlap*. In the light of these facts, we cannot escape the conclusion that the Montana-Tonopah Mining Company knew of the contemplated attachment in the suit of *Knox* v. *Dunlap,* and in anticipation thereof had caused to be prepared the bill of interpleader before the writ of attachment had been served. If Knox did not inspire this quick action, who did? Yet he insists that because of the interpleader proceedings he must be relieved from liability in the attachment suit. But be this as it may, the attachment suit was in full force and effect during all of the time the interpleader suit was pending; and, had the interpleader suit been dismissed for any reason, the money was still tied up in the attachment suit, according to appellant's contention, as shown by the prayer in his answer in the interpleader suit.

It is contended that, if respondents are entitled to judgment in any amount, it should not be for the amount for which judgment was rendered in the lower court, for the reason that the delay of the federal court in rendering judgment in the interpleader proceedings was due to the neglect of counsel for respondents to file briefs, and that the judgment should be reduced in an amount equal to the interest for that period of delay. The trial court found that there was nothing in the evidence to justify this contention, and in view of the record we do not feel justified in holding that the conclusion thus reached was reversible error.

3. The next question is: Did the trial court err by including in its judgment, as an element of damage, the sum of $600, paid by respondents as attorney's fees in the suit in the federal court? We think not. It was necessary to a protection of their rights that they appear and show their title to the judgment under the assignment. No money judgment was sought against the respondents in the suit in the federal court in which the money was attached, or in the interpleader. action. While, so far as we are informed, the attachment statutes of all the states provide that the plaintiff in an attachment suit shall give a bond to indemnify the defendant against all damages in case it should be adjudged that the attachment proceedings are wrongfully instituted, none of such statutes specifically designates the attorney's fee incurred by the defendant in defending the attachment proceedings as an item of damage. Yet the great weight of authority holds that such an expense is an item of damage. (2 R. C. L. 909; *Plymouth G. M. Co.* v. *U. S. Fidelity Co.,* 88 Pac. 567; *Parish* v. *Van Arsdale Co.,* 140 Pac. 835; *Balinsky* v. *Gross,* 128 N. Y. Supp. 1062; Drake on Attachments, 7th ed. sec. 175; *Boatwright* v. *Stewart,* 37 Ark. 623; *Fry* v. *Estes,* 52 Mo. App. 1; C. J. 528, 529; 4 Cyc. 878.)

This rule is not only sustained by the great weight of authority, but we think is founded on sound reason as well. Attachment proceedings are purely statutory in

practically all of the states (2 R. C. L., p. 801), and are very different from an ordinary action at law to recover judgment for money due. It is a harsh remedy, and for that reason one who brings the action must pay the damage sustained by the adversary in case the proceedings are wrongfully instituted. In many cases the defendant in the proceedings cannot be adequately compensated for the damages sustained, and we think the courts are amply justified in holding that attorney's fees should be allowed the defendant in case of a wrongful attachment. It is clear that a stranger to a suit whose property is wrongfully attached may recover damages, as we have shown, and we see no reason why necessary attorney's fees incurred in procuring the release of property from a wrongful attachment should not be considered as an item of such damage. If it is an item of damage in the one case, why not in the other? He who levies upon the property of a stranger does so at his peril. Such stranger should be saved harmless, and this cannot be done unless he is reimbursed his outlay in procuring the release of his property. It is no doubt true that cases may arise where this rule may work a hardship, but that may be said of every rule.

4. It is next contended that the question of attorney's fees is *res adjudicata.* We think not, under the circumstances. There was no pleading in the federal court wherein the question of attorney's fees was made an issue; and, if that matter might have been adjudicated under appropriate issues, no issue of that character having been involved, and the question not having been tried and the court not having undertaken to consider it, there is nothing upon which to sustain the contention. (*Gulling* v. *Washoe County Bank,* 29 Nev. 259, 89 Pac. 26.)

Perceiving no error in the record, it is ordered that the judgment appealed from be affirmed.

McCarran, C. J.: I concur.

Sanders, J., did not participate.