WOODROW UTLEY AND ANNA BETH UTLEY, HIS WIFE, APPELLANTS, v. JOE AIROSO AND EMILY AIROSO; KANSAS CITY TITLE INSURANCE COMPANY, E. C. SMITH AND CALED REALTY, RESPONDENTS.

No. 5931

February 6, 1970 464 P.2d 778

*A. D. Jensen,* of Reno, for Appellants.

*Streeter, Sala & McAuliffe,* of Reno, for Respondents.

# OPINION

By the Court, MOWBRAY, J.:

This case involves a sale of real property in October 1965 by Woodrow Utley and Anna Beth Utley, his wife, who are the appellants, to Wayne Pirtle, who was named as a defendant in the cause below, but who was never served with process and is not involved in this appeal.

The Utleys commenced this action in district court in May 1967, designating the following as defendants: Pirtle, the buyer; E. C. Smith, doing business as Caled Realty, the realtor who handled the transaction; Land Title Insurance Agency, Inc., and its agent, Elmer Griggs, the escrow agent; Kansas City Title Insurance Company, who issued the title policy; Joe and Emily Airoso, holders of a first deed of trust; and their trustee under the deed of trust, Nevada Title Guaranty Company, which trustee's foreclosure sale was scheduled for the day following the filing of the action.

The complaint consisted of three causes of action. The first cause sounded in fraud and sought damages in the sum of $50,000. It alleged that Smith, Griggs, and other, unknown defendants did "fraudulently alter and change the [Utley-Pirtle] Receipt and Agreement of Purchase" and cause the Airosos' deed of trust to become a first lien on the property. The second cause sought $6,500 damages from Kansas City Title under the Utleys' title insurance policy. And the third and final cause was directed against the Airosos and Nevada Title, seeking an injunction to prevent the imminent foreclosure sale.

The case was tried to the district judge sitting without a jury. He found against the plaintiff Utleys on all three causes of action and dissolved the temporary restraining order. The Airosos' deed of trust was foreclosed, and the property was sold. Hence this appeal.

1. *A Threshold Issue*

Appellants contend that the district judge dismissed plaintiffs' case pursuant to NRCP 41(b)[1] and that therefore the trier of the facts should have accepted as true the plaintiffs'

---

[1]NRCP 41(b):

"For failure of the plaintiff to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff has completed the presentation of

evidence and should have drawn all reasonable inferences in plaintiffs' favor. Bates v. Cottonwood Cove Corp., 84 Nev. 388, 441 P.2d 622 (1968); Havas v. Carter, 85 Nev. 132, 451 P.2d 711 (1969).

The record does not support appellants' position. It is true that, in his colloquy with counsel at the conclusion of plaintiffs' case, the district judge stated he would entertain a Rule 41(b) motion, but counsel for the defendants made it clear that they would not make a Rule 41(b) motion, but rather that they would submit the case on its merits.[2]

We construe the ruling of the district judge as a decision on the merits of the case. The "substantial evidence" rule then becomes the standard by which we must consider this appeal to determine whether there is substantial evidence in the record to support the findings and judgment of the district judge. We believe that standard has been met, and we affirm the judgment of the lower court.

2. *The Facts*

In October 1965, the Utleys signed a Receipt and Agreement to Purchase that had been prepared by E. C. Smith, the realtor, wherein the Utleys agreed to sell a parcel of realty they owned in Reno for the total purchase price of $22,500—$6,000 being payable "before close of escrow" and the "Balance of $16,500.00 shall be a note secured by a deed of trust; said note shall be payable in full including interest at 7% on or before one year from date of said note."

---

his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has failed to prove a sufficient case for the court or jury. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, or for lack of an indispensable party, operates as an adjudication upon the merits."

[2]"MR. JENSEN [attorney for plaintiffs]: If the Court please, first of all, has a motion been made under 41-B?

"THE COURT: It hasn't yet. I said I would entertain it. I want to hear from you first because I anticipate it will be made.

". . . .

"MR. SALA [attorney for defendants Kansas City Title and the Airosos]: Excuse me, your Honor. Mr. Brown [attorney for defendants Caled Realty and E. C. Smith] and I will not make a motion as to 41-B. We have no evidence to offer and we will submit the matter on its merits."

Following the district judge's decision, counsel for defendants stated again:

"MR. SALA: Your Honor, we have submitted the matter. This is a judgment on the merits.

"THE COURT: All right."

The document continues:

*"Seller agrees that the above mentioned note shall be second and junior in lein [sic] to a first note and deed of trust not to exceed $150,000.00 and shall bear interest of not more than 10% and a repayment in not more than 29 years."* (Emphasis added.)

There also appears on the original Receipt and Agreement to Purchase, after the subordination clause, supra, the following inked-in notation: "Buyer to submit loan of commitment to Seller." The Receipt and Agreement to Purchase was received in evidence as plaintiffs' Exhibit J, and when it was offered at trial the notation, "Buyer to submit loan of commitment to Seller." was x-ed out, with the initials "ECS." (E. C. Smith) and "W.U." (Woodrow Utley) immediately following the clause. Smith testified that the notation, "Buyer to submit loan of commitment to Seller." was added to the agreement when he first submitted it to Mr. Utley for his approval, but that it was later x-ed out in the presence of Mr. Utley and Mr. Pirtle at Smith's office, at the time Utley returned the signed agreement. Mr. Utley flatly denied that the notation was ever struck from the agreement in his presence.

An escrow was opened at Land Title Insurance Co. On November 3, 1965, the Utleys went to Land Title and signed their sellers' instructions, which had been prepared by Land Title in accordance with the terms of the Receipt and Agreement to Purchase. There was no mention in the sellers' instructions of a requirement that the buyer was to submit any loan commitment to the Utleys. The sellers' instructions provided for "a Note and Trust Deed for $16,500.00 all due and payable 1 year from close of escrow together with 7% interest which seller agrees to subordinate to a 1st note and deed of trust not to exceed $150,000.00 with interest not to exceed 10 percent amertized [sic] for 29 years."

Mr. Utley, who holds a Nevada real estate salesman's license, testified that neither he nor Mrs. Utley read the sellers' instructions prior to signing them.[3]

---

[3]"Q [by Mr. Jensen] Well, I show you plaintiffs' Exhibit A [the Utleys' instructions to Land Title] . . . And there appears to be two signatures on the bottom of that. Is that your signature?

"A [by Mr. Utley] Yes, sir.

". . . .

"Q You are familiar with your wife's signature?

"A I am sure I am.

"Q Did you read that document before you signed it, plaintiffs' Exhibit A in evidence?

"A I did not."

Mr. Pirtle signed the customary buyer's instructions and signed a promissory note to the Utleys in the principal sum of $16,500, with 7 percent interest—the principal and interest to be payable in 1 year. The deed of trust contained the following provision regarding subordination:

"This deed of trust is junior and subordinate to certain deed of trust recorded concurrently herewith *and* any other deed of trust for the purpose of interim financing, not to exceed an aggregate of $150,000.00. . . ." (Emphasis added.)

The "certain deed of trust recorded concurrently herewith" was a deed of trust securing the Airosos' promissory note for $11,000, payable in 1 year, including interest at the rate of 10%. Pirtle actually received only $10,000 from the Airosos, which sum was delivered to Land Title and disbursed as follows:

| | |
|---|---:|
| Caled Realty Real Estate Commission | $1,000.00 |
| Title Fee | 198.00 |
| Revenue Stamps | 24.75 |
| Escrow Fees | 80.00 |
| "Drawing" Deed Fee | 30.00 |

Lawyers Title, Trustee of Buyer's Deed of Trust, a Prior Lien on the Property:

| | | |
|---|---:|---:|
| Principal | $4,705.85 | |
| Interest | 27.45 | |
| Recon & Recording | 9.55 | |
| Collection | 11.76 | |
| | | 4,754.61 |
| Utleys | | 7.64 |
| Total | | $6,095.00 |

The balance of the $10,000, amounting to $3,905, was retained by Pirtle, who defaulted on the Utley and Airoso notes. The Airosos filed notice of default, and the foreclosure sale on their deed of trust was first noticed for February 10, 1967, and then continued to May 5, 1967.

3. *The Fraud Charge*

The record supports the district judge's finding that the named defendants were not chargeable with fraud as alleged in the Utleys' first cause of action. The thrust of the Utleys' argument is that any loan obtained by Pirtle under the subordination provision of their $16,500 deed of trust was subject

to their prior approval and to be used only for interim financing to build the multiunit apartment building on the property sold to Pirtle. The respondents agree that there was in the two documents—the Receipt and Purchase Agreement and the escrow instructions—an understanding between the Utleys and Pirtle for subordination, but that the purpose of subordination, that of interim financing, was not expressed, if that was the purpose, and that the first expression of the purpose of subordination for interim financing is contained in the $16,500 deed of trust that was unilaterally executed by Pirtle. Respondents concede that there is a conflict in the evidence, but assert that the Receipt and Purchase Agreement and the escrow instructions support the lower court's finding that the subordination was unrestricted, which finding may not be disturbed on appeal. We agree.

Interim financing, by its very terms, means temporary financing, as C. W. Baker, "a mortgage banker, builder and developer," who was examined by Mr. Jensen, testified in response to counsel's question.

"Q [by Mr. Jensen] Well, if somebody indicated to you that they had interim financing, what does that mean in your business?

"A It would be interim financing for construction of a residence, or a building, whereby the final loan was going to a permanent investor."

In the instant case the purported "interim financing" was for a loan not to exceed $150,000, payable in 29 years at 10 percent interest.

The Utleys argue that they had no knowledge of the Airoso note and deed of trust; yet the record shows that the $16,500 deed of trust that the Utleys received recited that it was *"junior and subordinate to certain deed of trust recorded concurrently herewith and any other deed of trust . . . not to exceed an aggregate of $150,000.00. . . ."* (Emphasis added.) The closing escrow statement that the Utleys received identified the $16,500 balance of their purchase price as being evidenced by a *"2nd* Note and Trust Deed—16,500.00." (Emphasis added.)

The title policy issued by Kansas City Title insuring the Utleys' $16,500 deed of trust, the issuance of which they acknowledge in paragraph IV of their second cause of action in their complaint verified by Mr. Utley,[4] clearly sets forth in Schedule B of the policy the Airoso deed of trust as being prior to the Utley security.

[4]"IV. That the defendant, KANSAS CITY TITLE INSURANCE COMPANY, did duly issue to plaintiffs its policy of title insurance."

We conclude that there is substantial evidence in the record to support the district judge's ruling in denying the Utleys' claim set forth in their first cause of action.

4. *Liability of Kansas City Title Insurance Company*

The record shows that the escrow agent did in fact pay to Lawyers Title of Reno $4,754.61, as trustee, the amount due on a promissory note secured by a preexisting deed of trust, but that Lawyers Title, who is not a party to this action, failed to record its deed of reconveyance until after the Utleys' complaint was filed. The note had been paid pursuant to the escrow instructions. The district judge ruled correctly in denying the Utleys damages on their second cause of action.

5. *The Airosos' Foreclosure*

There is nothing in the record to show that the Airosos were not entitled to proceed with their pending foreclosure sale of the property, as the note for which it was security had been in default for several months. The district judge properly dissolved the temporary restraining order prohibiting the foreclosure sale, which was issued at the time the Utleys filed their complaint.

6. *The Default of Land Title Insurance Co.*

Land Title failed to answer, and a default judgment was entered against the company. The district judge entered an order in favor of all the defendants. Appellants assert that it was error to absolve Land Title. We do not agree. Under the facts presented, we know of no theory that would support any finding that Land Title was liable in damages to the appellants. Cf. Peterson v. City of Reno, 84 Nev. 60, 436 P.2d 417 (1968); In re Forsyth's Estate, 45 Nev. 385, 204 P. 887 (1922); Bullion Mining Co. v. Croesus Gold & Silver Mining Co., 3 Nev. 336 (1867).

The judgment of the district court is affirmed.

COLLINS, C. J., ZENOFF, BATJER, and THOMPSON, JJ., concur.