NEVADA CREDIT RATING BUREAU, INC., a Corporation, and JOHN ADEN, Appellants, v. ISAAC N. WILLIAMS, Respondent.

No. 6703

November 17, 1972                    503 P.2d 9

*Wait & Shamberger,* of Reno, for Appellant, Nevada Credit Rating Bureau, Inc.

*George W. Abbott,* of Minden, for Appellant, John Aden.

*Daniel R. Walsh,* of Carson City, for Respondent.

## OPINION

By the Court, BATJER, J.:

This is an appeal from a judgment awarding respondent $32,002 compensatory damages jointly and severally against appellants, Nevada Credit Rating Bureau, Inc., (hereinafter Nevada Credit) and John Aden, and punitive damages of

$1,500 against Nevada Credit and $250 against Aden for abuse of process.

In 1961 respondent Williams lived in the Mina-Luning area in Mineral County. He had engaged in the mining business in this state since 1923, and had gained possession of the necessary equipment to enable him to excavate, move and strip earth. Williams performed these operations around the Lovelock area until 1958 when he encountered financial difficulties. He became indebted to Nevada Bank of Commerce on some conditional sales contracts, and when he defaulted on several of the payments Graid Construction Company of Reno paid the bank on his behalf. In return Graid received title to some of Williams' equipment. However, at all times, Williams retained possession of and the right to use all of the equipment.

He moved to the Mina area in 1961. There he met appellant Aden who was employed by a mining corporation doing business in that area. In the spring of 1962 Aden requested Williams to do some excavating work for him, but Williams was unable to accept because the rails on his bulldozer were worn out. Several times Aden offered to purchase the rails and let Williams repay him by doing the proposed excavation work. Williams finally accepted this offer, and became indebted to Aden in the amount of $4,287.03 for the rails as well as for miscellaneous advances for operating expenses and repairs to other equipment.

Aden had work available after Williams' bulldozer became operational, but he offered no work to Williams. Instead, he contracted the work out to other individuals even though Williams was at all times ready to perform. At about this same time Aden contacted Robert Records, general manager of a mining company in the area, in an effort to have Records attempt to purchase Williams' equipment. Records told Aden that he would not act as a middleman and that he was sure Aden could purchase the equipment directly from Williams. Records testified that Aden said "he would get it anyway."

Aden next contacted appellant Nevada Credit about collecting the amount owed him by Williams and they accepted the alleged debt on assignment for purposes of bringing suit. No request or demand for payment was ever made by Nevada Credit, and on November 20, 1962, they filed an action in Washoe County against Williams seeking recovery of $4,-395.07, plus interest, costs and attorney's fees. On this same date, Nevada Credit authorized an attachment of Williams' equipment and appointed Aden as its agent to accompany the deputy sheriff to Williams' property to execute the writ. Aden

instructed the deputy sheriff to attach all of Williams' equipment, including his housetrailer. The deputy served Williams with a copy of the writ, inventoried the equipment and placed sheriff's seals on most major pieces. The machinery was not placed in storage but was left on property near Williams' residence. The deputy sheriff instructed Williams that he was not to move or touch any of his equipment. All of Williams' equipment which the trial court found to have a reasonable value of over $30,000 was attached to secure the alleged debt amounting to less than $5,000.

In the next several months various efforts were made to have some of the equipment released but the requests were summarily rejected by Nevada Credit. Graid Equipment Company and other parties having legal title to some of the equipment sought a release of individual pieces of machinery but their claims were not recognized by appellants.

The case on the alleged debt was tried in district court on August 5, 1963, and the court found for Williams, holding that there was no account stated, but merely an agreement whereby Williams was to repay Aden by performing work for him. On appeal, we affirmed the lower court's decision, and held that the contract was executory, and that Williams had not breached it. Nevada Cr. Rating Bureau v. Williams, 80 Nev. 343, 393 P.2d 618 (1964).

In February of 1966 Williams brought an action for wrongful attachment and/or malicious prosecution. Aden and Nevada Credit denied the facts alleged by Williams and asserted as defenses that no actual attachment of the property was ever perfected by the sheriff, that they both acted upon the basis of probable cause and without malice, and that in any event Williams incurred no damages entitling him to compensation from them.

The trial court did not find the appellants guilty of wrongful attachment or malicious prosecution but instead found that they had committed the tort of abuse of process. Although abuse of process was not raised by the pleadings the evidence supported this issue. NRCP 15(b); Jaksich v. Guisti, 36 Nev. 104, 134 P. 452 (1913). The trial court found that as a direct and proximate result of the wrongful acts of Aden and Nevada Credit, Williams was deprived of the use of his property for 11 months (one machine for only 9 months) and that the reasonable rental value for that period, with adjustments for depreciation and demand for hiring the equipment was $32,002. In addition to these compensatory damages the court assessed punitive damages. No damages were awarded for suffering, humiliation, or loss of credit.

The appellants contend that the judgment of the trial court must be reversed because no valid attachment ever occurred upon which an action for wrongful attachment, malicious prosecution or abuse of process could be based. In this regard they rely upon NRS 31.060(2) which requires that personal property capable of manual delivery shall be attached by taking it into custody. All of Williams' machinery was bulky, and some was inoperable, but it would have been possible for the sheriff to have taken it into his physical possession. Nevertheless, the sheriff left the property in the equipment yard. He did examine all of the machinery, recorded all of the serial and identification numbers, and placed sheriff's seals on most of it. At the time the writ was served on Williams, the sheriff told him unequivocally that he was not to use or move any of his attached property. Williams obeyed this command for the duration of the attachment. Even if it could be said that the deputy sheriff permitted the attached property to remain in Williams' possession, the attachment lien continued in force between the appellants and Williams [Mickelson v. Williams, 312 P.2d 656 (Wash. 1957); Annot., 86 A.L.R. 1412; 6 Am. Jur.2d, Attachment and Garnishment, § 505]; see also 7 C.J.S. Attachment § 233d.

Here the trial court awarded damages for abuse of process based primarily upon the facts that the attachment was far in excess of that necessary to secure the debt, and was used in an attempt to pressure respondent into paying the claim. The appellants assert that the damages were improperly awarded because there was no adequate showing of the necessary elements of malice and want of probable cause. Although malice and want of probable cause are necessary elements for recovery in an action for wrongful attachment and malicious prosecution [McIntosh v. Knox, 40 Nev. 403, 165 P. 337 (1917)] they are not essential to recovery for abuse of process. The two fundamental elements that constitute the basis of the tort of abuse of process are (1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding. Barquis v. Merchants Collection Ass'n of Oakland, 496 P.2d 817 (Cal. 1972); Tempelton Feed and Grain v. Ralston Purina Co., 446 P.2d 152 (Cal. 1968). The action for abuse of process hinges on the misuse of regularly issued process, in contrast to malicious prosecution which rests upon the wrongful issuance of process. Clikos v. Long, 165 So. 394 (Ala. 1936). Here the trial judge found

that attempting to force payment of the claim rather than obtaining security for the debt was the ulterior purpose and that attaching all of the respondent's equipment and refusing to release any of it was the willful act not proper in the regular conduct of the proceeding. White Lightning Company v. Wolfson, 438 P.2d 345 (Cal. 1968); Tempelton Feed and Grain v. Ralston Purina Co., supra; Spellens v. Spellens, 317 P.2d 613 (Cal. 1957); Pimentel v. Houk, 226 P.2d 739 (Cal.App. 1951); Prosser on Torts, 856 (4th ed. 1971).

It is appellants' burden to show that the findings and judgment of the trial court were not based upon substantial evidence or were clearly erroneous. Brandon v. Travitsky, 86 Nev. 613, 472 P.2d 353 (1970); Utley v. Airoso, 86 Nev. 116, 464 P.2d 778 (1970). Our review of the record in this case discloses substantial evidence which supports the court's finding of abuse of process. Although the property was divisible, it was attached in its entirety. Property valued at over $30,000 was placed under attachment to secure an alleged debt of less than $5,000. Efforts to release parts of the property were summarily rejected while appellants possessed full knowledge of the devastating effect of the attachment upon respondent's business. These actions of the appellants in willful disregard of the right of respondent to use his property (subject only to a reasonable attachment) gave the trial court adequate grounds for concluding that the purpose of the attachment was to pressure payment rather than to secure a debt; that the attachment, in an amount so much greater than the alleged debt was a misapplication of process; and that the inability of respondent to continue to use his equipment caused damages for which he should be compensated. White Lightning Company v. Wolfson, supra; see Italian Star Line v. United States Shipping Board E. F. Corp., 53 F.2d 359, 361 (2d Cir. 1931).

Appellants further argue that the evidence does not support the trial court's award of damages. The trial court found that there was a demand in the Mina area for rental of the heavy equipment owned by Williams. Introduced into evidence were publications indicating reasonable rental value for this type of equipment. The court determined that Williams should be awarded damages based upon the loss of rental income he would have received had he not been dispossessed of his property during the 11-month attachment. After the total loss of rental value was determined, 50 percent was deducted therefrom representing the estimated time the equipment would be

idle due to weather and lack of demand. Another 5 percent was deducted for breakdown of equipment, and 25 percent was deducted which represented repairs made unnecessary due to the fact that the equipment was idle. Appellants rely upon Knier v. Azores Constr. Co., 78 Nev. 20, 368 P.2d 673 (1962) to support their argument that the damages in the case at bar were too speculative and uncertain. In *Knier*, this court denied loss of anticipated profits from motel rooms not timely finished by a contractor, because the business operation had just moved to a new location and no evidence was introduced to show it had or would operate at a profit. In the instant case Williams' business in Mina was not established, but there was substantial evidence in the record indicating that there was a demand for his equipment. The trial judge used the most recent publications on rental rates to arrive at a fair valuation. His computation of damages was not erroneous.

Damages were also allowed for actual costs of tires, batteries and repairs to the equipment made necessary due to exposure to the elements and vandalism during the 11-month attachment. The appellants offered to pay the cost of removing the equipment to a safe and secure place. However, the deputy sheriff made the decision to leave the equipment on Williams' lot where it was exposed to the elements. Neither Williams nor the appellants had any right or authority to either move the equipment to a more protected place or take steps to protect it where it was sequestered. In Fireman's Fund Insurance Company v. Shawcross, 84 Nev. 446, 442 P.2d 907 (1968), we announced that a sheriff is supposed to follow the directives given by the attaching plaintiff when the writ and accompanying instructions are in regular form. There is nothing in this case to suggest that either the writ or instructions were irregular in form. NRS 31.040 requires that the sheriff keep safely all of the property which he attaches. Here the attorney for the plaintiff instructed Aden to provide service to take the attached equipment to a storage place designated by the sheriff.[1] The deputy sheriff derived his power to seize and hold the attached property from the statutes and not from the appellants or respondent. He was not the servant or agent of either party. NRS 31.040; Sorrells v. Irion, 216 S.W.2d 1021 (Tex.Civ. App. 1948); 7 C.J.S. Attachment, § 281. However, the sheriff's

---

[1] The instructions directed to the deputy sheriff of Mineral County to attach personal property read in pertinent part: ". . . He (Mr. Aden) will provide tow service for all said equipment. All will be towed to place of storage which you designate."

failure to protect the attached property does not benefit the appellants and insulate them from the consequences of their initial tort. In an earlier case, Peterson v. Wiesner, 62 Nev. 184, 146 P.2d 789 (1944), this court in holding consequential damages flowing from a wrongful attachment said: "Granting, however, that the attachment proceedings were void, this does not avail appellant. Though void, they were in fact instituted by appellant who, through them, caused the Wiesners to be dispossessed of their property. . . ." See also: NRS 31.030, McIntosh v. Knox, supra.

The appellants also contend that the respondent failed to take advantage of NRS 31.200 and related statutory provisions in his effort to have all or part of his property released from attachment, and as a consequence he should have been precluded from recovering damages for abuse of process. Although NRS 31.200 provides an avenue for relief from an excessive levy, it is not an exclusive remedy and action pursuant to that statute is not a condition precedent to an action for malicious prosecution, wrongful attachment or abuse of process.

The trial judge concluded that the acts of the appellants amounted to malice and he assessed punitive damages against them. NRS 42.010[2] provides that punitive damages are recoverable where the defendant has been guilty of oppression, fraud or malice expressed or implied. That statute was first enacted in the State of Nevada in 1965 and is verbatim with California Civil Code, Sec. 3294 which was first enacted in 1872 and has not been amended since 1905. The cases decided in that jurisdiction have held that the malice contemplated by that section is malice in fact and that the phrase "express or implied" has reference only to the evidence by which malice is established. Davis v. Hearst, 116 P. 530, 538 (Cal. 1911); Wolfsen v. Hathaway, 198 P.2d 1 (Cal. 1948); Sturges v. Charles L. Harney, Inc., 331 P.2d 1072 (Cal.App. 1958).

The applicable principles, as stated in 14 Cal.Jur.2d, Damages, § 176 are: "An award of exemplary damages, in an action for damages for injuries inflicted by the defendant's malicious act, can be made only if the plaintiff can show that malice in fact, as distinguished from malice in law, existed with respect to the defendant's act. The distinction between malice

---

[2]NRS 42.010: "In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."

in fact and malice in law is substantial. Malice in fact, or actual malice, denotes ill will on the part of the defendant, or his desire to do harm for the mere satisfaction of doing it. Malice in law, on the other hand, is merely a legal fiction; it is that form of malice which the law presumes, either conclusively or disputably, to exist on the production of certain designated evidence. Malice in fact cannot be presumed; its existence must be found as a fact by the jury, although it may be proved either by direct evidence of declarations, or by an inference drawn from the acts or conduct of the defendant. While the element of malice which is essential to a recovery of exemplary, or punitive, damages is sometimes called 'express malice,' 'actual malice,' 'real malice', or 'true malice', it is always, in the last analysis, malice of only one kind—the malice of evil motive."

Malice in fact must be established by the evidence if it is the ground relied upon to support an award of punitive damages. Gombos v. Ashe, 322 P.2d 933 (Cal.App. 1958). Here it is asserted by the appellants that the award of punitive damages was improper because no actual malice was shown as required by NRS 42.010.

Malice in fact, sufficient to support an award of damages within the scope of NRS 42.010, may be established by a showing that the appellants' wrongful conduct was willful, intentional and done in reckless disregard of its possible results. Toole v. Richardson-Merrell Inc., 60 Cal.Rptr. 398 (Cal.App. 1967). The trial court found that the appellants' conduct was "malicious."

There is evidence that the attachment was far in excess of that required and was made with the intent of pressuring payment of the alleged debt. Furthermore, the appellants knew that the attachment of all of respondent's equipment would have a devastating effect upon his business. This conduct provided the requisite malice in fact and warranted the trial court's granting punitive damages to the respondent. Giddings v. Freedley, 128 F. 355 (Cir. 2, 1904).

Affirmed.

ZENOFF, C. J., and MOWBRAY, THOMPSON, and GUNDERSON, JJ., concur.